**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| - vs – | Case No. 16-cr-746-PKC |
| **DAVID R. BERGSTEIN,** *et al,* | |
| Defendant. | |

### NOTICE OF MOTION AND MOTION TO MODIFY TERMS OF DEFENDANT DAVID R. BERGSTEIN'S RELEASE TO PERMIT DOMESTIC TRAVEL UPON PRIOR APPROVAL OF PRETRIAL SERVICES

**PLEASE TAKE NOTICE** that Defendant David R. Bergstein, through his undersigned attorneys, hereby moves the Court for an order modifying the terms of his release to permit him to travel domestically subject to prior approval from Pretrial Services.

Dated: January 9, 2017

**BIENERT, MILLER & KATZMAN PLC**
By:     /s/ Thomas H. Bienert, Jr.
         Thomas H. Bienert, Jr.
         Steven Jay Katzman
         Anthony R. Bisconti
         903 Calle Amanecer, Ste. 350
         San Clemente, CA 92673
         T: 949.369.3700
         F: 949.369.3701
         E-mail: tbienert@bmkattorneys.com
                 skatzman@bmkattorneys.com
                 tbisconti@bmkattorneys.com
         *Counsel to Mr. Bergstein*

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

Defendant David R. Bergstein ("<u>Mr. Bergstein</u>"), by and through his undersigned counsel, files this *Motion to Modify Terms of Defendant David R. Bergstein's Release to Permit Domestic Travel Upon Prior Approval of Pretrial Services* (the "<u>Motion</u>").  For the reasons set forth below, Mr. Bergstein asks the Court to modify the terms of his release to permit him to travel domestically subject only to prior approval from, and supervision by, Pretrial Services.

<u>**PRELIMINARY STATEMENT**</u>

Currently, Mr. Bergstein's travel is restricted to California and the Southern and Eastern Districts of New York without prior approval of the Court.  By this Motion, Mr. Bergstein asks that the Court modify the terms of his release to permit him to travel domestically subject only to prior approval from Pretrial Services.  Pretrial Services supports this request.  Indeed, in response to Mr. Bergstein's most recent request for permission to travel, Officer Matthew S. Carter with Pretrial Services wrote:

> …[I]t is still my hope that your attorney will petition the Court in New York seeking permission to extend your travel throughout the continental United States with my permission. This essentially eliminates the need to file with the Court every time you want to leave the Central District of California and makes it between you and me."

*See* Affidavit of Anthony R. Bisconti ("<u>Bisconti Aff.</u>"), at Ex. 1 (December 30, 2016 e-mail).  Pretrial Services expressed the same sentiment in response to an earlier travel request as well.  *See* Bisconti Aff., Ex. 2 (November 28, 2016 email from Officer Carter stating ". . . it is my hope that in the near future the bond conditions can be modified to allow the defendant to travel throughout the continental US with prior Pretrial Services' permission.  This would allow the defendant to leave the

State of CA with my permission, not requiring the Court's approval.").

Since Mr. Bergstein's initial appearance, Mr. Bergstein has submitted three travel requests, each of which the Court has approved.  One of these trips included oversees travel.  Each time, Mr. Bergstein has timely reported to Pretrial Services, and has otherwise fully complied with the terms of his pretrial release. Given the nature of Mr. Bergstein's business, which is the primary reason frequent domestic travel outside of California is required, it is anticipated that many more such requests will be necessary before trial.  The requested modification to the terms of Mr. Bergstein's release allows Pretrial Services to continue its constant supervision of Mr. Bergstein and to know where he is at all times.  At the same time, it removes the burden and cost to Mr. Bergstein of having to apply to the Court every time he requires permission to travel outside of California, as well as the burden placed on the Court of having to review and rule upon each request.

Accordingly, Mr. Bergstein requests that the Court grant the Motion and authorize him to travel domestically subject only to prior approval by, and supervision of, Pretrial Services.

## RELEVANT FACTUAL BACKGROUND

On or about September 29, 2016, before the Indictment but after receiving copies of various grand jury subpoenas related to this case, Mr. Bergstein's counsel advised the Government that Mr. Bergstein had prearranged a trip to Israel for mid-October 2016 to visit his mother with his wife and children, but that Mr. Bergstein was willing to cancel the trip and work to address any concerns with the Government if that posed any issue.  Bisconti Aff. at ¶ 4.  This included an offer for Mr. Bergstein to self-surrender in the event the Government decided to pursue an indictment.  The Government indicated it did not object to his travel. Subsequently, on or about October 17, 2016, however, Mr. Bergstein's counsel advised the Government that Mr. Bergstein did not attend the trip to Israel so that he could focus on this case.  *Id.*

Additionally, the Government has produced a recording by Government informant Paul Parmar ("Parmar")[1]—made sometime shortly before the Indictment was unsealed, in which Mr. Bergstein told Parmar of his concern with travelling for fear that the Government may arrest him, his willingness to self-surrender in the event of arrest, and his intent to forgo travel pending further clarity on the Government's intention. *See id.* at ¶ 5.[2] Specifically, on that recorded conversation produced by the Government, the following exchange occurred:

**Parmar:** Are you coming to New York anytime soon or no?

**Mr. Bergstein:** I—I—I'm kind of afraid to travel 'cause I also told them if you want to arrest me, please tell me, I'll turn myself in, 'cause then I can arrange bail, they go 'we'll get back to you.' So I don't know when I'm gonna get arrested, I'm not even moving. You know, they're not even talking to me, I'm willing to turn myself in 'cause of course I'm gonna fight it. So, you know, I'd rather them arrest me at home…I go to New York, I don't know what they're gonna do.

**Parmar:** No but if like you have told them that, that is not good if they try to arrest you, that will look bad on them.

**Bergstein:** My point is like I say, you know, just be prepared, they could arrest you anywhere, so I don't want to be doing it when I'm travelling [inaudible], that's why I cancelled my trip to New York . . . I have reason to be in New York, I have business, but I don't want to travel until I know.

---

[1] Parmar is a central figure in this case, as he advocated, engaged in and, ultimately,  reneged on the transaction at the heart of the Indictment after being paid millions of dollars.   Parmar has been an informant for the Government since at least 2010—including during the time of the transactions identified in the Indictment—and has recorded dozens, if not hundreds, of his conversations with Mr. Bergstein before, during, and after the events alleged in the Indictment.  To date, the Government has produced only ten (10) of Parmar's recordings.  Mr. Bergstein has requested the rest of the recordings from the Government.

[2] The Government identified the recording with bates number USAO_WC_00169921.

*See* Bisconti Aff., Ex. 3.

Nonetheless, on November 9, 2016, the Government arrested Mr. Bergstein and unsealed the Indictment in this case.  Mr. Bergstein made his initial appearance before the Court on November 17, 2016.  During Mr. Bergstein's initial appearance, the Court denied Mr. Bergstein's request to be permitted to travel nationwide, noting that "[i]t's important that [the Court] know and Pretrial Services know if he is not going to be where we expect him to be."  *See* 11/17/16 Hr. Tr. at 14:9-16.  Mr. Bergstein has fully satisfied the conditions of his release, including but not limited to the posting of both a $600,000 secured bond and a $2,000,000 unsecured bond.

On November 22, 2016, Mr. Bergstein submitted a letter to the Court requesting permission to travel on a pre-planned and pre-paid family trip to the Turks and Caicos.  [Doc. 13].  The Court granted that request. [Doc. 22].  On November 29, 2016, Mr. Bergstein requested permission to travel domestically for business. [Doc. 23].  The Court also granted that request. [Doc. 27].  Subsequently, Mr. Bergstein requested modification of the parameters of the trip requested on November 29, 2016, which the Court also approved [Docs. 29 & Doc. 30].  Again on December 28, 2016, Mr. Bergstein requested permission to travel for business, and again the Court granted the request. [Docs. 37 & 38].  With each request, Pretrial Services did not object, and the Government only objected to the initial request to travel abroad.  [Doc. 18].

## ARGUMENT

Mr. Bergstein is not a flight-risk and his conduct both pre- and post-Indictment demonstrate that he fully intends on defending the charges against him, with respect to which he anticipates he will be fully exonerated.

***First***, as set forth above, prior to the unsealing of the Indictment, Mr. Bergstein communicated with the Government by keeping it apprised of his travel plans, limiting his travel in light of the Government's investigation (including

cancelling a trip to visit his mother in Israel), and advising the Government of his willingness to voluntarily surrender in the event the Government decided to proceed with Indictment. Mr. Bergstein's conduct demonstrates that he fully intends on facing and defending the charges against him, rendering the current restrictions on his domestic travel unnecessary.

**Second**, Mr. Bergstein is not a flight risk. He has significant ties to his community—not the least of which is his wife and two school-age sons, and his successful businesses—and remains steadfast in his belief that he will be exonerated in this case. Mr. Bergstein should be permitted to continue to work and travel domestically to conduct his business and earn a living, particularly since he will remain within the United States' jurisdiction. The charges in this case do not make him more of a flight risk; he's known about the investigation and potential charges for almost a year and has remained available to address them. Additionally, Mr. Bergstein has posted both a $600,000 secured bond and a $2 million unsecured bond, further ensuring his appearance at trial.

**Third**, the requested modification to Mr. Bergstein's travel restriction eliminates the cost and burden placed on Mr. Bergstein and the Court in having to go through the written approval process currently in place each time Mr. Bergstein needs to travel domestically, while simultaneously ensuring that Pretrial Services is fully apprised of Mr. Bergstein's whereabouts at all times prior to trial. As set forth above, Pretrial Services has expressed its preference on multiple occasions that the terms of Mr. Bergstein's release be modified to permit domestic travel with prior approval by Pretrial Services and elimination of the requirement for Court approval. *See* Bisconti Aff., Exs. 1 & 2. Accordingly, the proposed modification to Mr. Bergstein's travel restrictions will alleviate the burden with seeking and obtaining formal Court approval going forward, while ensuring that he remains subject to close supervision.

*Finally*, Mr. Bergstein has a strong desire to try this case and be fully exonerated, and his ability to travel domestically with Pretrial Services' prior approval will not change that.  The facts of this matter are unusual.  The transactions at issue in the Indictment are isolated and occurred five years ago, out of hundreds of legitimate business transactions that Mr. Bergstein has transacted.  The Indictment is premised on an alleged fraud against investors in a hedge fund, when Mr. Bergstein was not a fiduciary to the investors and did not deal with them, but dealt only with those that ran the hedge fund, namely defendant Keith Wellner and his partner in Weston Capital Asset Management, Albert Hallac.  Further, as the facts come out in this case, it will become clear that the Government's Informant—Parmar—was a central figure in the transactions at issue in the Indictment and the party who controlled the transaction and caused its failure.  Mr. Bergstein looks forward to defending himself at trial.

## <u>CONCLUSION</u>

For the foregoing reasons, Mr. Bergstein requests that the Court modify the terms of Mr. Bergstein's release to permit him to travel domestically subject only to prior approval from, and supervision by, Pretrial Services.

Dated: January 9, 2017
**BIENERT, MILLER & KATZMAN PLC**
By:   <u>/s/ Thomas H. Bienert, Jr.</u>
        Thomas H. Bienert, Jr.
        Steven Jay Katzman
        Anthony R. Bisconti
        903 Calle Amanecer, Ste. 350
        San Clemente, CA 92673
        T: 949.369.3700
        F: 949.369.3701
        E-mail: tbienert@bmkattorneys.com
                skatzman@bmkattorneys.com
                tbisconti@bmkattorneys.com
        *Counsel to David R. Bergstein*