H229BERC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4                 v.                          16 CR 746 (PKC)

5    DAVID BERGSTEIN AND KEITH
     WELLNER,
6
                     Defendants.
7
     ------------------------------x
8
                                             New York, N.Y.
9                                            February 2, 2017
                                             3:43 p.m.
10

11   Before:

12                    HON. P. KEVIN CASTEL

13                                           District Judge

14
                         APPEARANCES
15
     PREET BHARARA
16        United States Attorney for the
          Southern District of New York
17   EDWARD IMPERATORE
      ROBERT W. ALLEN
18        Assistant United States Attorneys

19   BIENERT, MILLER & KATZMAN
          Attorneys for Defendant Bergstein
20   THOMAS H. BIENERT, JR.
     ANTHONY BISCONTI
21
     LAW OFFICES OF GORDON MEHLER
22        Attorneys for Defendant Wellner
     GORDON MEHLER
23   REBECCA CAMPBELL

24

25

H229BERC

1          (In open court; case called)

2          MR. IMPERATORE:  Good afternoon, your Honor.

3          Edward Imperatore and Robert Allen for the government.

4  With us at counsel table is Special Agent Shannon Bieniek of

5  the FBI.

6          THE COURT:  Good afternoon to you all.

7          And for the defendant.

8          MR. BIENERT:  Good afternoon, your Honor.

9          Thomas Bienert, Jr. and Anthony Bisconti on behalf of

10  David Bergstein who is present on bond.

11          THE COURT:  All right.

12          MR. MEHLER:  Good afternoon, your Honor.

13          Gordon Mehler and Rebecca Campbell on behalf of Keith

14  Wellner.

15          THE COURT:  Good afternoon to you all.  Let me hear

16  from Mr. Imperatore.  You can bring me up to date on what has

17  transpired since our last conference.

18          MR. IMPERATORE:  Yes, your Honor.

19          We were last before the Court for an arraignment and

20  initial pretrial conference on November 16.  The Court

21  indicated at that time that at today's conference the parties

22  should be prepared to articulate whatever motions they plan to

23  file and the Court would set a motion date, the motion

24  deadline.

25          Since the initial pretrial conference the government

H229BERC

| | |
|---|---|
| 1 | has produced discovery on a rolling basis.  I'm happy to walk |
| 2 | through it, if it would be helpful to the Court. |
| 3 | THE COURT:  Tell me what remains in terms of the |
| 4 | rolling. |
| 5 | MR. IMPERATORE:  Your Honor, we've produced -- we have |
| 6 | essentially completed our discovery production with one caveat. |
| 7 | Today, by hand, we produced to counsel for Mr. Bergstein the |
| 8 | contents of an e-mail search warrant, an e-mail account that |
| 9 | belongs to Mr. Bergstein.  We produced that on a thumb drive. |
| 10 | We have conferred with Mr. Bergstein's counsel to obtain names |
| 11 | of attorneys so that we can run a privilege review for that |
| 12 | e-mail account.  So we have not yet shared the contents of that |
| 13 | account with counsel for Mr. Wellner.  We will do that on a |
| 14 | rolling basis as we identify nonprivileged documents. |
| 15 | And I would just note, your Honor, that this e-mail |
| 16 | account is a business e-mail account that Mr. Bergstein used to |
| 17 | communicate with Mr. Wellner, among others.  And because we |
| 18 | have received from Weston's counsel and produced to the |
| 19 | defendant's the contents of Mr. Wellner's e-mails for Weston, |
| 20 | that production includes numerous e-mails already between |
| 21 | Mr. Wellner and others in this particular e-mail account |
| 22 | belonging to Mr. Bergstein. |
| 23 | THE COURT:  All right.  Let me hear from Mr. Bienert |
| 24 | with regard to any motions that Mr. Bergstein anticipates |
| 25 | making. |

H229BERC

1          MR. BIENERT:  Yes, your Honor.  And we do think there

2     will be motions.

3          What I would think is, and if we're able to schedule

4     it this way, I think there's sort of two types of motions.

5     We've had a good bit of communication between the U.S.

6     Attorneys and my office.  We agree on a fair amount of things.

7     There are some things that -- we don't know yet whether we

8     fully disagree but we may disagree on so I expect that there

9     will be some discovery motions in particular relating to our

10    view that there is a particular participant in this

11    transaction, that's the indicted business deal, who is a

12    government informant and, as we'll lay out in our motion when

13    we file it, your Honor -- we've told the government some of

14    this -- we have a decent amount of evidence indicating and

15    confirming, I should say, that he is involved in the business

16    transaction.  And so we're going to be bringing a motion to get

17    discovery about him, his role in the transaction, what else

18    there might be that evidences what the transaction terms were

19    and what benefit, if any, he got for his role in the

20    transaction vis-a-vis not being involved in this criminal

21    prosecution.

22          THE COURT:  I'm not familiar with this sort of a

23    motion.  You have a right to discovery under Rule 16.

24          MR. BIENERT:  Yes.

25          THE COURT:  You have a right to Giglio and Brady

H229BERC

 1    material.  And you have a right to 3500 material after the

 2    witness testifies at trial.

 3              What kind of discovery are you talking about?

 4              MR. BIENERT:  Well, frankly, I believe it would

 5    involve things that would fall in all of those categories but I

 6    guess the most specific, at least rule wise, would be Rule

 7    16(e) review of materials that are relevant to preparing the

 8    defense.  If I can give your Honor the 30-second overview of

 9    why we think it's relevant, I'm happy to.

10              THE COURT:  Please.

11              MR. BIENERT:  Okay.  Your Honor, I'm sure, has seen in

12    the indictment, this is a business transaction investment where

13    the government has alleged that investors were defrauded.  In

14    essence, the business transaction at issue, in simpleton terms,

15    and I'm a simpleton, is our side of the table, my client and

16    Mr. Wellner, and their cooperator, Mr. Hallac, were getting

17    funds into the investment in exchange for what I'll call a

18    healthcare billing business and related software from a guy

19    name Paul Parmar.  Paul Parmar is not mentioned in the

20    indictment.  He is and was, before, during, and after this

21    case, a paid, as we understand it, but certainly a government

22    informant.  Our view is the reason the deal did not go forward

23    is after collecting millions of dollars from our side of the

24    table for the billing software and related businesses,

25    Mr. Parmar did not deliver them.  So -- and for things that I

H229BERC

1    can submit in our briefing and I've told the government about,

2    we have deposition transcripts and other things where

3    Mr. Parmar in his own words says he negotiated this deal and he

4    was involved in it.

5         So we believe that, as parts of materials necessary to

6    prepare the defense, for one, as well as Brady and certainly

7    Jencks, which sometimes, depending on your Honor's view, may

8    not come until later, we should be entitled to evidence in the

9    government's possession that evidences Mr. Parmar's role in

10   this business transaction, what the terms were and what he did

11   or didn't do to cause the transaction to fail.  That's kind of,

12   I guess, the sweetest, tightest concentric circle.

13        We also are aware, from related civil actions, that

14   there are hundreds of hours of recordings by Mr. Parmar with my

15   client --

16        THE COURT:  So let me see whether I have this

17   straight.

18        This would be material that you would need in order to

19   effectively cross-examine this man should he appear at trial?

20        MR. BIENERT:  Well that would certainly be a part of

21   it.  But there's a lot more to it than that.

22        We believe that much of this would be material that

23   sets forth the actual terms of the business transaction which

24   we would need to, for example, be able to review to know what

25   other documents to be able to subpoena as discovery or people

7

H229BERC

1    to subpoena to trial to be able to effectively put on --

2              THE COURT:  Why would the other terms of the deal be

3    unique to this individual?

4              MR. BIENERT:  Well, frankly -- well, we have a client

5    who has a Fifth Amendment right and we believe that this is an

6    unusual case because we believe that an actual government

7    informant memorialized, one way or the other, the deal in real

8    time:  The actual discussions, what was the agreement, what was

9    supposed to happen.  So, we believe that we are entitled, under

10   Rule 16 in preparing the defense, to get this evidence, to the

11   degree that it's in control of the government.  And I will say,

12   your Honor, it's a little more confusing.  In defense of the

13   AUSAs who are here, much of this is happening in California.

14   And we don't -- I do not know what they have or don't have.  I

15   assume some of this is out of their control per se in this case

16   but, we would submit, is in the control of the government,

17   either through Mr. Parmar himself or through the FBI handlers

18   of Mr. Parmar, at least one of which is in California.

19             So, in a nutshell, we think that he has real time

20   evidence, documents and recordings that actually let us hear

21   what was said, what was the deal, and what was supposed to

22   happen, which, of course, our view is didn't happen because he

23   yanked the deal out from under the investment.

24             THE COURT:  And the government has declined to give

25   you real time recordings of your clients' own statements to

8

H229BERC

1  Mr. Parmar?

2           MR. BIENERT:  What the government has related -- and

3  obviously they can correct me if they think I'm wrong -- they

4  have given us I believe eight recordings of Mr. Parmar relative

5  to this case.  We have said, we have good authority,

6  depositions, declarations, and some recordings that show that

7  there are many more.  And they have said to me --

8           THE COURT:  Well stick with my question.  And these

9  many more would be of conversations between Mr. Parmar and one

10  of the two defendants in this case?

11           MR. BIENERT:  Yes, your Honor.

12           THE COURT:  Correct?  Okay.  That's what I wanted to

13  know.

14           MR. BIENERT:  And they had said they are not aware of

15  them.

16           And I have basically said I think you need to be aware

17  of them because it's your FBI handlers and your informant.  And

18  we're having a dialogue about that.

19           And where we left it today, your Honor, because this

20  is all happening in the last several weeks, is we agreed that I

21  would tell your Honor that I think there is significant

22  discovery disputes potentially about this that we probably

23  should have a scheduling to address that, but the AUSAs did

24  offer to me that we could continue to dialogue as we're

25  marching towards that to see what we can agree on.  That's sort

H229BERC

1    of where we are.

2              THE COURT:  Is there any other category of motion that

3    you anticipate?

4              MR. BIENERT:  There are, your Honor, but frankly some

5    of them are not -- well I can tell you the kind of easy ones

6    that we're at least contemplating.

7              THE COURT:  I don't need to know about in limines for

8    trial, of course.

9              MR. BIENERT:  I think we are at least considering --

10   but we have new counsel who has been very gracious to talk to

11   me, but we haven't been able to talk substantively, for

12   cocounsel -- we may want to seek a severance because we think

13   that their client and ours have very different roles as it

14   relates to investors, but I don't know yet.

15             The indictment, from my standpoint at least, is a

16   long, covers-a-lot-of-ground indictment.  And there's a part of

17   me that thinks it's really, as alleged, two conspiracies, not

18   one.  So there is a chance that I would want to file a motion

19   relating to a severance conspiracy-wise but I haven't decided.

20             And then, frankly, I think there is a better chance

21   than in most cases that, depending on what we get related to

22   Mr. Parmar, the informant, or don't get, that we'd be making

23   some sort of motions related to, for example, spoliation of

24   evidence, whether or not we believe, if he is a government

25   agent himself, there has been misconduct.

H229BERC

1    I do not bring motions like that very often.  And I'm

2  certainly not here to say that they will -- there will be those

3  motions.  But, depending on what happens with this whole Parmar

4  situation and the discovery disputes, I could certainly see

5  bringing those.

6    And if I could add one other thing, your Honor, just

7  in terms of timing and things.

8    I was reminded by Mr. Bisconti, in looking at things,

9  we're also dealing in this case, the investment entity and

10  investors in the indictment, many of them are offshore and the

11  assets itself were put by Mr. Parmar into a company called

12  Constellation which is in England.  So I believe that, at a

13  minimum, we're going to have some written discovery demands of

14  out-of-the-country entities.  And at least in my experience

15  with letters rogatory, Hague Convention type of stuff, that

16  just tends to delay the discovery process as opposed to if it's

17  here in the U.S.

18    THE COURT:  Well, let me ask you when are you planning

19  on making a decision as to whether or not to seek that

20  discovery.

21    MR. BIENERT:  Well, I guess I would want to be able to

22  file a discovery motion probably in -- by the end of let's say

23  March 1.

24    THE COURT:  I'm talking about the letters rogatory,

25  sir.

H229BERC

1          MR. BIENERT:  I would think that we will make

2    decisions on that within 60 days, depending on what we see --

3          THE COURT:  Why do you need 60 days?  Why aren't you

4    ready today?

5          MR. BIENERT:  Well I'll tell you why, your Honor.

6          The government has given us about 150,000 pages of

7    documents and, as I indicate, much of it is from Weston, the

8    fund involved.

9          Because of something that I don't believe is their

10   fault at all we weren't able to access the documents because of

11   the technical stuff.  It didn't open.  And we only were able to

12   access it beginning this month.  So we are still in the middle

13   of going through that.

14         Depending on what we see in, for example, the Weston

15   fund documents, we may or may not need to subpoena more records

16   related to Weston.

17         THE COURT:  Well what kind of records would you be

18   talking about?

19         MR. BIENERT:  Well I'd be talking about records, for

20   example, that set forth the terms of the investment.

21         THE COURT:  From Weston?

22         MR. BIENERT:  Yes, your Honor.

23         And I will give you an example of where our clients

24   are a little different.

25         My client did not deal with the Weston investors.  He

H229BERC

1    dealt with the other codefendant and his colleague.  And so at

2    least one issue in the case will be:  A, what were the terms

3    between Weston investors and Weston; but B, to what degree were

4    those terms ever expressed or known by my client.

5          My client comes at the case from a very different

6    perspective than somebody who is operating the hedge fund.  So

7    until we're able to get through the discovery to know what is

8    there and not there, it's hard for Mr. Bisconti and I to figure

9    out what we need to see.

10         Obviously if everything is there that we need, we're

11   not going to be seeking further discovery.

12         The second issue -- and I believe we can subpoena this

13   sooner rather than later, but this whole issue I now know that

14   the asset that we believe should have been as this deal and the

15   deal fell apart, Mr. Parmar took that asset to Britain, and

16   it's called Constellation.  We want to subpoena those records

17   and we need to try to get them -- I don't know yet, because we

18   just learned the timing of the Constellation company being put

19   together, I've just discovered that in the last few weeks -- I

20   would think we'll be pursuing that within a couple of weeks.  I

21   don't know whether we're pursuing something in Europe or

22   something here in the U.S.  Those are the types of things.

23         If I could just add one other thing.  The government,

24   again, has been very good about, I think, giving us many tapes

25   and recordings that they have.  But, as an example, they have

H229BERC

1    given us, as of January 5, they have given us 922 calls between

2    another person referenced in the indictment and my client.  And

3    just from a volume standpoint, we need to get through very

4    lengthy calls.  And they have told us that they have a bunch of

5    other recordings, as many as -- I think it's fifteen thousand

6    contacts.  Several of them are I think -- I'm sorry, your

7    Honor, text messaging.  But a lot of phonecalls that they're

8    making available for us here in Manhattan at their office.

9           Suffice it to say we're going to have to spend a

10   tremendous amount of time just figuring out how to get through

11   lengthy, lengthy recordings.  And, again, that all, at least in

12   my experience, just builds in a lot of time into the discovery

13   process.

14          THE COURT:  And the government is unwilling to

15   identify for you their best present belief as to which

16   recordings or text messages they plan to rely on at trial?

17          MR. BIENERT:  Well I don't want to speak for the

18   government.  They've identified which ones they say are with my

19   client.

20          THE COURT:  Right.

21          MR. BIENERT:  I don't know beyond that.

22          THE COURT:  So they have done that for you?

23          MR. BIENERT:  For my client, yes, your Honor.

24          THE COURT:  Any other motions?

25          MR. BIENERT:  Those are the motions -- it's all in

14

H229BERC

| | |
|---|---|
| 1 | that ilk.  I also think there's a decent chance that we'd be |
| 2 | coming to your Honor with some Rule 17 subpoena motions which |
| 3 | are from our side.  Because I think there are some entities |
| 4 | where we would think in order to do further trial prep we |
| 5 | should get things before the trial date itself.  But those are |
| 6 | the kind of things we could submit probably in 30 days. |
| 7 | THE COURT:  Any other motions? |
| 8 | MR. BIENERT:  Not that I can think of at this time, |
| 9 | your Honor. |
| 10 | THE COURT:  All right. |
| 11 | Let me hear from the codefendant, Mr. Mehler. |
| 12 | MR. MEHLER:  Yes, your Honor.  I will not add much to |
| 13 | what Mr. Bienert mentioned.  I would say that the motion that |
| 14 | is most likely would be a severance motion. |
| 15 | THE COURT:  All right.  Let me hear from the |
| 16 | government.  Any response to what's been asserted here today? |
| 17 | MR. IMPERATORE:  Yes, your Honor, briefly in response. |
| 18 | In terms of the ability to open documents the |
| 19 | government has produced, the government produced the vast |
| 20 | majority of its production on or about December 5 which was |
| 21 | approximately two weeks after the initial conference.  The |
| 22 | defense came to us with concerns about opening certain items. |
| 23 | But as the Court will recall, these are the Concordance |
| 24 | databases that relate primarily to the Gerova transaction.  We |
| 25 | see those databases as being tangential at best to the charges |

H229BERC

1    in this case.  We've produced them out of an abundance of

2    caution because they are tangentially related to the case, but

3    they certainly do not relate to the heart of the charges.  In

4    any event, the core materials that we've produced were readily

5    accessible to the defense from the outset.

6            In terms of the representations regarding Paul Parmar,

7    we've had, I think, a productive dialogue, the defense and the

8    government, about this discovery issue.  We plan to continue

9    that.  That said, we've taken -- the defense has come to us and

10   asked:  What recordings does the government have in its

11   possession between Paul Parmar and David Bergstein or Paul

12   Parmar relevant to this investigation.

13           THE COURT:  Let me pause.

14           Would you acknowledge on the record that you have an

15   obligation to produce any such recordings to the extent they

16   exist?

17           MR. IMPERATORE:  And in the government's possession,

18   yes.

19           THE COURT:  And in the government's possession.

20           MR. IMPERATORE:  Yes.

21           We believe we have satisfied that, your Honor.  We've

22   taken steps to determine whether the government is in

23   possession of such recordings.  We've produced approximately

24   eleven.  The defense believes that there may be others in

25   possession of the government.  We're not aware of them.  In any

1    event, we plan to continue that dialogue.  But we're -- at this

2    point we're not aware of any additional recordings that we

3    haven't already produced that meet that description in the

4    possession of the government.

5            The defense has also made a point about recorded calls

6    that were produced.  It's true, the government produced

7    approximately 900 calls on January 4 to the defense.  These are

8    calls, your Honor, with the person who is identified as

9    individual one in the indictment.  The timeframe of the calls

10   generally precede the allegations in the indictment.  We see

11   them again as being likely tangentially relevant to this case

12   but, of course, they are calls with the defendant.  We've

13   produced the calls that we're aware of that memorialize the

14   defendant's voice.  And we've offered to run searches to the

15   extent the defense knows any additional phone numbers for the

16   defendant.

17           THE COURT:  All right.

18           I'm going to set a date for any motions by either

19   defendant or any letters rogatory or other discovery requests

20   of March 17, 2017.

21           The government will have until April 5 to respond.

22           And the defendants may have until April 14 to reply.

23           I'll have a conference on April 28 at 4 p.m.

24           Let me hear from defense counsel as to their

25   availability for trial and when they believe I should set this

H229BERC

1   case for trial.

2           MR. BIENERT:  Your Honor, I would ask -- I'd also

3   follow up on the motion schedule -- I would ask -- we were

4   discussing amongst ourselves, counsel, of a trial date

5   somewhere between say November and January.

6           THE COURT:  November and January?

7           MR. BIENERT:  Yes, your Honor.

8           THE COURT:  Why would you think that would be an

9   appropriate time to try this case?

10          MR. BIENERT:  Well I would think that's an appropriate

11  time to try this case because I was hoping --

12          THE COURT:  How about July?

13          MR. BIENERT:  Well, your Honor, I'm going to be here

14  when you tell me to be here, no question, but at least can I

15  explain my thinking?

16          THE COURT:  Sure.

17          MR. BIENERT:  My thinking is, and what I was going to

18  ask is, doing the discovery issues within the next month or

19  two, which is the date you have.

20          I do believe that what we get in that discovery could

21  lead to other motions.  So at least for me what I was

22  thinking --

23          THE COURT:  What other motions?

24          MR. BIENERT:  Well depending on what's in the

25  discovery.  Again, it could be a spoliation of evidence motion.

H229BERC

1    Depending on what we learn or don't learn about Mr. Parmar and

2    what he did or didn't do as a government agent, I could see

3    some sort of impropriety type motion.

4            THE COURT:  Isn't what you're saying now total

5    speculation?

6            MR. BIENERT:  No.

7            THE COURT:  Tell me why it isn't total speculation.

8            MR. BIENERT:  Because in the limited recordings we

9    have and in various declarations and depositions we have from

10   other lawsuits involving Mr. Parmar, they in essence have,

11   through his own words and others, him saying:  I am going to

12   get David Bergstein.  I will make sure he goes to jail.  I am

13   not going to give the items that were promised in this deal

14   unless and until he gives me many more million dollars.  Things

15   like that.  He also says:  I record every single call and

16   discussion I have for the FBI.  He tells people that

17   repeatedly.  And we have him saying that on recordings.

18           And so I believe this is an unusual case.  This is not

19   a fishing expedition.  And you will see when we present it to

20   you, we will have documented evidence that Mr. Parmar

21   negotiated this deal, was the reason the deal failed.  And I

22   will go a step further.  When people like Mr. Bergstein, as you

23   will see in recorded evidence, your Honor, say:  Hey, you need

24   to do what you're supposed to, he said:  You better leave me

25   alone or I'm going to get the FBI on you.  We have it.

H229BERC

1          THE COURT:  I look forward to seeing your motion on

2     March 17.

3          MR. BIENERT:  Yes, your Honor.

4          THE COURT:  So you should be able to make that motion.

5     That's my point.

6          MR. BIENERT:  I can make that motion.  I agree.

7          What I don't know is, again, I don't take my

8     obligations as an officer of the court and, of course, looking

9     out for my client lightly.  I can't stand here and tell you

10     that there's a government misconduct motion and I would never

11     allege that unless I see the evidence.  But given what I have

12     seen of how outrageous Mr. Parmar's statements and actions are,

13     this could be one of those unusual cases that once we get

14     everything we believe that motion is appropriate.  I, of

15     course, will not know that until well after April 28 when your

16     Honor rules on our other motions.  So what I --

17          THE COURT:  If you have new material that you didn't

18     have on March 17, I'd be delighted to hear you on it when you

19     get it.  But if it's material you had in your possession and

20     control prior to making the motions, I would expect you to

21     raise it in your motions to be filed by March 17.

22          MR. BIENERT:  Understood, your Honor.  And I will do

23     that.

24          THE COURT:  Good.

25          MR. BIENERT:  But I will give you the example of the

1   types of things I don't know, and I told these guys this on the

2   phone.  I have a question in my mind as to how a guy who is a

3   government informant, who from my standpoint is the reason

4   we're all sitting here, the reason the deal failed, who got

5   over $7 million of investor money that they're saying our

6   clients wrongfully were involved in, yet he's not mentioned in

7   the indictment, he's not charged, and if you read that

8   indictment, you would have no idea he's involved.

9          So one of the types of things that I think we will

10  move we should be able to get:  What was the arrangement with

11  Mr. Parmar?  What did he do or receive that should allow him to

12  walk away with the assets and several million dollars which he

13  turned into what he says is now worth a hundred million dollars

14  in England?

15         THE COURT:  You're talking about what did he get or

16  receive from the government?

17         MR. BIENERT:  Yes, your Honor.

18         THE COURT:  You're entitled to that.

19         MR. BIENERT:  I think I am.

20         THE COURT:  Correct.

21         MR. BIENERT:  I haven't gotten it.

22         THE COURT:  That's not a motion.  Why is that a

23  motion?  You're entitled to that.

24         Mr. Imperatore, is defense counsel entitled to that?

25         MR. IMPERATORE:  Your Honor, I want to clarify what

H229BERC

1   the defense is claiming entitlement to.

2           THE COURT:  I was here.  You were here.  Information

3   as to what a cooperating witness received from the transaction,

4   any benefit he received from the transaction.

5           MR. IMPERATORE:  Your Honor, we've produced records

6   that show --

7           THE COURT:  No.  I'm just asking you the question.  If

8   you have information in your possession or control, in the

9   government's possession or control as to what benefits this

10  individual received with regard to the transaction at issue, do

11  you acknowledge an obligation to produce that?

12          MR. IMPERATORE:  Yes.  And I think the Court is

13  inquiring about records that show money he received from the

14  transaction.

15          THE COURT:  Correct.

16          MR. IMPERATORE:  Yes.  And we believe we've produced

17  such records.

18          THE COURT:  All right.  So this is going to be very

19  easy.  You're not going to need a big memorandum of law.  You

20  just got admissions from the government, the same way you got

21  admissions before with regard to the Rule 16 materials, any

22  statements that your client made.  So this is not going to be

23  heavy lifting.  And if I have a bunch of case law, it looks to

24  me like somebody's overdoing it.  So it should be very simple.

25  You have the transcript here.  We know what you're entitled to.

H229BERC

1    The question is whether you got it.

2              MR. BIENERT:  Fair enough, your Honor.

3              THE COURT:  Okay.  So I'm all ears.

4              MR. BIENERT:  Well, I think that is it.  I think -- I

5    envisioned, perhaps wrongly, that there would be things that we

6    might have to move for based on my discussions to date that

7    depending on your rulings and what we get could lead to other

8    motions related to Mr. Parmar.  That's what I thought.

9              I will continue -- and we have had a dialogue.

10   They've been very good about talking with us.  And I will

11   continue to do that.  And I guess the best I can do at this

12   point is we will be talking about what we think we should get,

13   and hopefully we get it, and to the degree that there are

14   things that we think we're entitled to that we didn't get, then

15   that's going to be the basis of a motion.

16             I will definitely endeavor to file any and all motions

17   that we would expect to bring by your deadline.  But I, in good

18   faith, can't say that there's not a scenario where, based on a

19   ruling in April, I will get materials that make me think that,

20   for example, a misconduct by Parmar motion is more applicable

21   than it was as I'm standing here.

22             THE COURT:  The question is why you think a trial date

23   in the period that you've referenced, which was November to

24   January --

25             MR. BIENERT:  Yes.

H229BERC

1          THE COURT:  -- is appropriate.

2          MR. BIENERT:  Right.  Well the reason -- my thinking

3    was we deal with the discovery issues first.  We deal with

4    dispositive or any other motions by the end of the summer.  We

5    then --

6          THE COURT:  No.  No.  No.  If there are any

7    dispositive motions, they will have been filed by March 17,

8    sir.

9          If you have a motion that you have the ability to make

10   by March 17 and you don't make it, your right to make that

11   motion is waived.

12         MR. BIENERT:  Fully understood, your Honor.  I think

13   we may --

14         THE COURT:  We're not going to sequence this.  Let's

15   see how we do with the first round of motions then we'll gear

16   up on wave two.  It's not going to go like that.

17         If you have a motion addressed to the indictment, you

18   have the indictment, you have the ability to draft your motion,

19   if you have such a motion, I've given you the date to make it.

20   That's not a motion that arises, as you put it, in July.

21         MR. BIENERT:  I agree.

22         THE COURT:  Well, then I misunderstood.  I'll have to

23   go back and reread the transcript because I thought you had

24   just indicated otherwise.

25         MR. BIENERT:  If I did, I misspoke.

24

H229BERC

1          THE COURT:  I thought you had indicated dispositive

2     motions would come in July.  Maybe I misheard you.

3          MR. BIENERT:  I will give you an example of --

4          THE COURT:  No.  Did you say that or did I mishear you

5     on that?

6          MR. BIENERT:  I did say that.

7          THE COURT:  So I'm not making it up that you said that

8     you're thinking of dispositive motions in this case in July.

9          MR. BIENERT:  That was -- well before I walked in this

10    court I thought you were asking me what was my thinking about a

11    November to January trial date.

12         THE COURT:  Well now you've been updated on the

13    schedule.  So now maybe you want to revise your thinking on

14    when this case is ready -- when you think you can try this

15    case.

16         MR. BIENERT:  Well I will say, on the dispositive

17    motions, I don't view a severance motion as a dispositive

18    motion.  We're going to bring that by the date you just gave

19    us.  What a dispositive motion would be, for example, if the

20    discovery and the evidence does show that Mr. Parmar was a

21    government agent and recorded everything in this case but he

22    then selectively produced certain things and he got rid of most

23    of the evidence, that would be a dispositive motion that I

24    could see bringing.  A dispositive motion would be -- and I

25    have no idea if this is the case -- if it turns out --

H229BERC

1           THE COURT:  And that would be true regardless of

2     government knowledge or acquiescence in that conduct, you

3     believe you would get the indictment dismissed if Parmar was

4     off on his own toot doing this?  Is that what you're saying?

5           MR. BIENERT:  Well I think your Honor said the key

6     thing, of course.  It would depend on how we define whether he

7     was doing this because he's a governmental informant or whether

8     he was I think you said off on his own toot.  That's a factual

9     issue.  I don't know the answer.

10          What makes this case strange to me at least, your

11    Honor, is Parmar, in my view, is this big elephant in the room

12    who is at the center of the case.  Yet if you look at the

13    indictment --

14          THE COURT:  He's not mentioned in it.  I heard that.

15    I heard that already.  Thank you.

16          MR. BIENERT:  So I don't know the answers.  And I'm

17    not going to tell you that I have something I don't have.  What

18    I know is I have colorable demonstrable evidence that puts him

19    at the center of the case recording things as a so-called

20    government informant.  Where that leads, until I see it, what I

21    don't have, I can't tell you.

22          THE COURT:  You've already heard me say -- so I don't

23    know why you're urging this on me -- you can't be expected to

24    make a motion on March 17 on material you don't have on

25    March 17.  I've said that.

26

1        MR. BIENERT:  And, again, I apologize.  I was

2   trying --

3        THE COURT:  I've said that.

4        MR. BIENERT:  Absolutely.  So I was explaining why, at

5   least in my somewhat simpleton head sometimes, I thought a

6   motions follow-up date of later in the summer would make sense

7   because I could see needing that date.  But I agree with you

8   that I don't know if I would.  And then my assumption was a

9   trial date would make sense in the three to four months after

10  that.  That was my thinking.

11       THE COURT:  Let me hear from defense counsel.

12       MR. IMPERATORE:  Your Honor, I apologize.  I just want

13  to clarify my answer on one thing.

14       The Court had asked about records showing benefits to

15  individuals.  I want to be clear.  The materials that we've

16  produced are bank records that show monies that were received

17  by various individuals, including the defendant and others,

18  from the transaction, in other words, Weston money.  I want to

19  be clear that that's what I mean with respect to benefits.

20       THE COURT:  Parmar -- whatever this gentleman's name

21  is.  What's his name?

22       MR. IMPERATORE:  Paul Parmar.

23       THE COURT:  Parmar.  Parmar is getting paid by the

24  government for his work.  Do you agree that defense is entitled

25  to know that?

H229BERC

1          MR. IMPERATORE:  Your Honor, I'm not in a position to

2     confirm what any individual's relationship is to the

3     government.

4          THE COURT:  If an informant is being paid by the

5     government, do you agree defense counsel is entitled to know

6     it?

7          MR. IMPERATORE:  Not as a matter of Rule 16.

8          THE COURT:  As a matter of Giglio?

9          MR. IMPERATORE:  As a matter of Giglio or 3500.

10          THE COURT:  Okay.  But sticking with Giglio, there

11     would be a constitutional obligation to produce that, correct?

12          MR. IMPERATORE:  May I have a moment, your Honor.

13          THE COURT:  Yes.

14          MR. IMPERATORE:  Yes, your Honor.

15          THE COURT:  And if there is some other benefit that

16     the government is aware of that he is receiving because of his

17     work on the case and the government has that information in its

18     possession and control, would you acknowledge that you would

19     have an obligation to produce that as well?

20          MR. IMPERATORE:  Yes, your Honor.  To the extent it's

21     Giglio or 3500.  Not as Rule 16.  Correct.

22          THE COURT:  Well when you say to the extent it's

23     Giglio, would you acknowledge that such material would be

24     Giglio material?  If you had in your possession and control

25     that an informant or a cooperator received some other benefit

H229BERC

1   from participating in making the case, that that would be

2   Giglio material you would need to produce?

3          MR. IMPERATORE:  Yes.  When the time comes.  Yes.  If

4   that individual takes the stand and at the deadline for

5   producing such material, yes.

6          THE COURT:  Well that's 3500 material.  Giglio

7   material may be different.  But you acknowledge it's Giglio

8   material?

9          MR. IMPERATORE:  To the extent that individual is a

10  witness, yes.

11         THE COURT:  That's what I wanted to find out.  I

12  think -- I'm hoping that that may make it a little bit easier.

13         So what I propose to do is to set this case down for

14  trial for 10 a.m. on July 10, 2017.  And I'll set a date for

15  final pretrial submissions.

16         MR. IMPERATORE:  Your Honor, respectfully, while we

17  appreciate that the Court is setting this down for a prompt

18  trial, Mr. Allen and I will be in trial at that time in other

19  cases.  In light of our summer trial schedule and having

20  conferred with defense on their availability, we might propose

21  a time in October if it would please the Court.

22         THE COURT:  Look, nobody wants to try this case right

23  away, not the government, not the defense, I'll take it up when

24  we get to the end of April then.  So we have a conference on

25  for April 28.  That's the government's prerogative.

H229BERC

<div style="margin-left: 2em">

1      And I'll hear -- is there anything further from

2  defense counsel?  Any other areas that you need to cover or

3  want to cover today?

4            MR. BIENERT:  May I have just a moment?

5            THE COURT:  Sure.

6            MR. MEHLER:  Your Honor, while we're waiting.  Just a

7  very minor matter.  The Court approved a vacation for my client

8  among the -- the Court so ordered it in hand, and there was a

9  provision there that he has to return his passport by

10  February 20, which is a federal holiday.  Now probation has no

11  problem, or pretrial services, has no problem with him turning

12  it on the 21st when the courthouse opens again, but asks that

13  I have the Court at least validate orally that it would be

14  okay.

15            THE COURT:  I have to have an order.  So let me see

16  whether --

17            MR. MEHLER:  I have the Court's order.

18            THE COURT:  If you have the Court's order, I can

19  endorse it.

20            MR. MEHLER:  That would be fine, your Honor.

21            THE COURT:  And we'll docket it.

22            MR. MEHLER:  It would be simply changing it from the

23  20th to the 21st.

24            THE COURT:  This is now the third endorsement on it.

25  I've advised both sets of clients not to make any nonrefundable

</div>

H229BERC

1    reservations anywhere without making an application to the

2    Court.

3              Okay.  So that should take care of the passport

4    return.

5              Anything else?

6              MR. IMPERATORE:  The government moves to exclude time

7    between today and April 28 in the interests of justice to allow

8    the defendants to review the discovery the government has

9    produced.

10             MR. BIENERT:  Agreed, your Honor.  And nothing else.

11             MR. MEHLER:  We also agree, your Honor.

12             THE COURT:  I find that the ends of justice will be

13   served by granting a continuance to April 28.  And that the

14   need for a continuance outweighs the best interests of the

15   public and the defendant in a speedy trial.  The reasons for my

16   finding are that the defendant -- there is a motion schedule in

17   this case that will require significant work by defense counsel

18   and the government to respond to, and while a separate

19   exclusion of time under the Speedy Trial Act is probably not

20   necessary given the motion schedule but nevertheless for the

21   avoidance of doubt time is excluded between today and April 28

22   at 4 p.m.  With that, we are adjourned.  Thank you very much.

23   See you in April.

24             (Adjourned)

25