UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

                      -against-

DAVID BERGSTEIN,

                      Defendant.
-----------------------------------------------------------x

16-cr-746 (PKC)

MEMORANDUM
AND ORDER

CASTEL, U.S.D.J.

        Defendant David Bergstein is charged in a seven-count indictment with securities fraud, investment advisor fraud, wire fraud, and conspiracy to commit all three, in violation of 15 U.S.C. §§ 78j(b), 78ff, 80b-6, 80b-17, 18 U.S.C. §§ 371, 1343, 1349, and 17 C.F.R. § 240.10b-5. Bergstein has moved to dismiss the indictment on the grounds that it is impermissibly duplicitous. He also seeks to compel disclosure, or alternatively judicial review, of the grand jury minutes. For the reasons explained below, Bergstein's motion is denied.

BACKGROUND

        The indictment charges Bergstein with conspiring with Keith Wellner, General Counsel of Weston Capital Asset Management ("Weston"), and Albert Hallac, Weston's President, to defraud investors in three different Weston funds: the Class TT Portfolio (the "TT Portfolio"), the Wimbledon Financing Master Fund ("WFF"), and the Partners 2 Fund (the "P2 Fund"). Specifically, the indictment charges Bergstein and Wellner with (1) concealing material information from Weston investors about transactions involving their money; (2) transferring funds from one pool of Weston investors to benefit a separate pool of Weston investors without disclosing the conflicts of interest; and (3) misappropriating investor funds for their own benefit.

In 2010, Weston entered into an agreement with Gerova Financial Corporation ("Gerova") in which Weston agreed to transfer assets from WFF to Gerova in exchange for restricted shares of Gerova stock. (Indictment ¶ 10.) After Gerova's stock price dropped in 2011, Bergstein proposed a plan to Hallac and Wellner which would allow Weston to unwind this transaction and retrieve the WFF assets. (Id. ¶ 11.) According to the plan, Gerova would release the WFF assets back to Weston, and Weston would returned the Gerova stock. (Id.) Weston would then place the recovered WFF assets into Arius Libra Inc. ("Arius Libra"), a shell company controlled by Bergstein, in exchange for an equity stake in Arius Libra. (Id.) Weston would also agree to pay off $5 million in debts incurred by Gerova including some owed to Bergstein. (Id. ¶ 12.) Gerova agreed to the transaction and it was executed during the summer of 2011. (Id. ¶ 11.)

In order to complete this transaction, Bergstein, Hallac, and Wellner allegedly arranged a loan from the P2 Fund to Arius Libra which was secured by the WFF assets (the "P2 Loan"). (Id. ¶¶ 13-14.) Therefore, if the P2 Loan was not repaid, the P2 Fund could liquidate WFF assets to make P2 investors whole, to the detriment of WFF investors. (Id. ¶ 14.) The defendants did not disclose this loan or the attendant conflicts of interests to P2 Fund or WFF investors. (Id. ¶ 15.) In addition, Bergstein represented to Hallac and Wellner that the loan would be used to pay Gerova debts and capitalize Arius Libra but instead he misappropriated a large portion of the loan proceeds and used them for his own benefit and to pay other individuals. (Id. ¶ 16.)

The indictment further alleges that in 2011, Bergstein, Wellner, and Hallac arranged a swap agreement whereby Hallac and Wellner transferred $17.7 million from the TT Portfolio to Swartz IP Services Group Inc. ("Swartz IP"), an entity controlled by Bergstein. (Id.

¶ 24.)  Bergstein represented to Wellner and Hallac that he would provide certain investment returns and meet investor redemption requests by TT Portfolio investors, but instead misappropriated a large portion of the transferred funds for his own benefit and lied about the capitalization of Swartz IP.  (Id. ¶¶ 24, 27.)  In addition, Bergstein, Wellner, and Hallac transferred $3 million of the TT Portfolio funds to the P2 Fund in order to pay back part of the P2 Loan.  (Id. ¶ 26.)  The details of this swap agreement were not disclosed to TT Portfolio or P2 Fund investors.  (Id.)  Wellner and Hallac also improperly paid themselves out of these transferred funds.  (Id. ¶ 30.)

Finally, the indictment alleges that Bergstein and Wellner worked closely together to arrange these transactions and conceal them from investors, including by backdating agreements, drafting fraudulent documents, and making false disclosures to Weston investors. (Id. ¶¶ 22-23, 32-34.)

Bergstein argues that the indictment should be dismissed because it is impermissibly duplicitous.  According to Bergstein, the allegations in the indictment describe two separate schemes or conspiracies: one between Bergstein and Wellner to defraud Weston investors and a second between Bergstein and others to defraud Wellner and Hallac. (Def.'s Mem. 1).  Because he claims that each count of the indictment improperly charges two crimes, Bergstein seeks dismissal of the indictment or, alternatively, an order requiring the government to elect one of the schemes or conspiracies and revise the indictment accordingly by striking the allegations related to the other scheme.  (Id. at 9).

DISCUSSION

I.  Motion to Dismiss.

Rule 8(a) requires "separate counts" for each charged offense. Fed. R. Crim. P. 8(a). "An indictment is impermissibly duplicitous where: 1) it combines two or more distinct crimes into one count in contravention of Fed. R. Crim. P. 8(a)'s requirement that there be 'a separate count for each offense,' and 2) the defendant is prejudiced thereby." United States v. Sturdivant, 244 F.3d 71, 75 (2d Cir. 2001) (citing United States v. Murray, 618 F.2d 892, 896 (2d Cir. 1980)).

Applying the duplicity doctrine to a conspiracy indictment presents unique issues because "a single agreement may encompass multiple illegal objects." Murray, 618 F.2d at 896. "[I]t is well established that the allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for the conspiracy is the crime and that is one, however diverse its objects." United States v. Aracri, 968 F.2d 1512, 1518 (2d Cir. 1992) (internal citations and quotation marks omitted). "[U]nder the law of this Circuit, acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme." Id. (internal citations and quotation marks omitted). In addition, acts which merely constitute different means of carrying out the same underlying crime may properly be included in one count. See Murray, 618 F.2d at 896.

As alleged in the indictment, Bergstein's misrepresentations to Wellner and Hallac simply constituted one method of carrying out the underlying conspiracy and were part of a single continuing scheme to defraud Weston investors. The fact that Bergstein allegedly mislead his co-conspirators about his intended use of investor funds and Swartz IP's capitalization does not create a wholly separate scheme or conspiracy. See United States v.

Berger, 224 F.3d 107, 114-15 (2d Cir. 2000) ("a single conspiracy is not transformed into multiple conspiracies merely by virtue of the fact that it might involve two or more phases or spheres of operation") (citation omitted); United States v. Ohle, 678 F. Supp. 2d 215, 222 (S.D.N.Y. 2010) ("Each member of the conspiracy is not required to have conspired directly with every other member of the conspiracy; a member need only have 'participated in the alleged enterprise with a consciousness of its general nature and extent.'") (quoting United States v. Rooney, 866 F.2d 28, 32 (2d Cir. 1989)); Aracri, 968 F.2d at 1518.

On its face, the indictment charges a single conspiracy to defraud Weston investors. Whether more than one conspiracy actually exists is a question of fact better left for the evidence at trial. See Ohle, 678 F. Supp. 2d at 222; Aracri, 968 F.2d at 1519 ("Whether the government has proved a single conspiracy or has instead proved multiple other independent conspiracies is a question of fact for a properly instructed jury.") (internal quotation marks omitted). In addition, to the extent that Bergstein is concerned that a conviction on any count of the indictment would lead to uncertainty as to jury unanimity, these concerns can be addressed by an appropriate jury instruction "that ensures that the jury is unanimous as to the conduct underlying the conviction." Sturdivant, 244 F.3d at 79.

Bergstein's motion to dismiss the indictment is denied.

II. Grand Jury Minutes.

In addition to moving to dismiss the indictment, Bergstein argues that the grand jury minutes should be disclosed because the duplicity of the indictment indicates that the grand jury was improperly instructed as to what constitutes a single conspiracy. "The court may authorize disclosure . . . of a grand jury matter . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand

jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). However, "[a] review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct." United States v. Torres, 901 F.2d 205, 233 (2d Cir. 1990) (abrogated on other grounds by United States v. Marcus, 628 F.3d 36 (2d Cir. 2010)).

"It is well-settled that a defendant seeking disclosure of grand jury minutes has the burden of showing a 'particularized need' that outweighs the default 'need for secrecy' in grand jury deliberations." United States v. Forde, 740 F. Supp. 2d 406, 413 (S.D.N.Y. 2010) (quoting United States v. Moten, 582 F.2d 654, 662 (2d Cir. 1978)). "[The Rule 6(e)(3)(E)(ii) requirement of showing a ground to dismiss the indictment because of a matter before the grand jury] extends to legal instructions given to the grand jury." United States v. Jailall, No. 00 Cr. 69 (RWS), 2000 WL 1368055, at *2 (S.D.N.Y. Sept. 20, 2000) (Sweet, J.). However, "[m]ere speculation that . . . the Government may have improperly instructed the grand jury . . . falls far short of the showing to overcome the presumption of secrecy." Forde, 740 F. Supp. 2d at 414.

Bergstein bases his request for disclosure of the grand jury minutes, or alternatively for judicial review, only on the alleged duplicity of the indictment. However, as the Court finds that the indictment is not duplicitous, Bergstein has failed to show a "particularized need" sufficient to warrant disclosure of grand jury materials. Bergstein's motion to compel disclosure of the grand jury minutes is denied.

CONCLUSION

For the foregoing reasons, Bergstein's motion to dismiss the indictment (Dkt. 65) is DENIED.

SO ORDERED.

*P. Kevin Castel*
P. Kevin Castel
United States District Judge

Dated: New York, New York
May 3, 2017