USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12-28-17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
UNITED STATES OF AMERICA,

                -against-

DAVID BERGSTEIN,

                          Defendant.
-----------------------------------------------------------------x

16-cr-746 (PKC)

MEMORANDUM
AND ORDER

CASTEL, Senior District Judge:

        Defendant David Bergstein applied to the Court pursuant to Rule 17(c), Fed. R. Crim. P., for the issuance of various subpoenas duces tecum. (Dkts. 98, 143). The Court authorized the issuance of eight subpoenas. (Dkts. 145, 149). The government now moves to quash the subpoenas that Bergstein served on Albert Hallac, a cooperating government witness, and Keith Wellner, a cooperating government witness who was until recently Bergstein's co-defendant.[1] (Dkt. 163). For the reasons that will be explained, the Court grants the government's motion as to the subpoenas to Hallac and Wellner.

BACKGROUND

        Bergstein is charged in a seven-count indictment with securities fraud, investment advisor fraud, wire fraud, and conspiracy to commit all three, in violation of 15 U.S.C. §§ 78j(b), 78ff, 80b-6, 80b-17, 18 U.S.C. §§ 371, 1343, 1349, and 17 C.F.R. § 240.10b-5. (Dkt. 1). The indictment charges Bergstein with conspiring with Hallac, the President of Weston Capital Asset

---

[1] The government, in its reply brief to the instant motion, moved to quash a third Rule 17(c) subpoena that Bergstein served on another individual, Paul Parmar, on the same grounds argued in this motion. (Dkt. 174). Bergstein opposes the motion as to Parmar in both form and substance. (Dkt. 179). The Court reserves its decision with respect to the government's motion to quash the subpoena directed to Parmar.

Management ("Weston"), and Wellner, Weston's General Counsel, Chief Operating Officer, and Chief Compliance Officer, to defraud investors in three different Weston funds: the Class TT Portfolio (the "TT Portfolio"), the Wimbledon Financing Master Fund Ltd. ("WFF"), and the Partners 2 Fund (the "P2 Fund"). (Id.).

On or about May 2, 2017, Bergstein's counsel requested *ex parte* the Court's permission to file an application under seal for the issuance of trial subpoenas pursuant to Rule 17(c), Fed. R. Crim. P. (Dkt. 98). On or about October 19, 2017, Bergstein's counsel made a similar request with respect to a second group of Rule 17(c) subpoenas. (Dkt. 143). The Court granted Bergstein a right to file the motions *ex parte* and under seal (Dkts. 98, 143), but noted that the Court would "consider the propriety of continued sealing" upon review of the full request (Dkt. 143). In total, Bergstein applied for nearly fifty such subpoenas. (Dkt. 145).

In Orders dated October 25 and October 27, 2017, the Court notified the parties of its issuance of eight such subpoenas "without prejudice to the rights of the subpoenaed persons or entities." (Dkts. 145, 149). The Court rejected the remaining applications because Bergstein failed to make the required factual showing, including "why he cannot properly prepare for trial without the subpoenaed documents," and failed to avoid a "fishing expedition." (Id.). On December 6, 2017, the government filed the instant motion to quash two of the eight issued subpoenas. (Dkt. 163). Bergstein filed his opposition on December 11, 2017. (Dkt. 164). The same day, the Court approved an *ex parte* request from Bergstein to file a sealed, *ex parte* supplement to his opposition. The government filed its reply on December 19, 2017. (Dkt. 174).

As noted, the instant motion challenges the subpoenas directed to cooperating witnesses Hallac (the "Hallac Supoena") and Wellner (the "Wellner Subpoena") (together, the

"Subpoenas"). (Dkt. 163). The Hallac Subpoena requires Hallac to produce three categories of documents and things, referencing terms defined elsewhere:

1. ALL DOCUMENTS showing the return or loss to investors in WFMF, WIMBLEDON TT, and/or the P2 FUND from June 1, 2011 to the present.
2. ALL COMMUNICATIONS with investors in WFMF, WIMBLEDON TT, and/or the P2 FUND explaining or demonstrating the return or loss on their investment with WFMF from June 1, 2011 to the present.
3. All COMMUNICATIONS with WELLNER or Jason Galanis regarding Gerova Financial Group Ltd., BERGSTEIN, the P2 FUND, WFMF, or Fund.com.

(Dkt. 163, Ex. A) (capitalization in original). The Wellner Subpoena requires Wellner to produce nine categories of documents and things, referencing terms defined elsewhere:

1. All DOCUMENTS reflecting any PAYMENTS received on account of the assets of WFMF from July 1, 2011 to the present.
2. All DOCUMENTS reflecting the disposition of any PAYMENTS received on account of the assets of WFMF from July 1, 2011 to the present.
3. All COMMUNICATIONS with BERGSTEIN.
4. All COMMUNICATIONS with PARMAR from June 1, 2011 to the present.
5. All COMMUNICATIONS regarding ARIUS, PINEBOARD, MD TABLET, PARMAR, or BERGSTEIN.
6. ALL DOCUMENTS showing the return or loss to investors in WFMF, WIMBLEDON TT, and/or the P2 FUND from June 1, 2011 to the present.
7. ALL COMMUNICATIONS with investors in WFMF, WIMBLEDON TT, and/or the P2 FUND, explaining or demonstrating the return or loss on their investment with WFMF from June 1, 2011 to the present.
8. All COMMUNICATIONS with HALLAC regarding Gerova Financial Group, Ltd., BERGSTEIN, WFMF, the P2 FUND, WIMBLEDON TT, or Fund.com
9. All COMMUNICATIONS with Jason Galanis regarding Gerova Financial Group Ltd., BERGSTEIN, WFMF, the P2 FUND, WIBLEDON TT, or Fund.com.

(Dkt. 163, Ex. B) (capitalization in original).

DISCUSSION

I.  Standing

The parties dispute whether the government has standing to move to quash the Subpoenas on behalf of non-parties. Courts in the Second Circuit have acknowledged that the government has standing to challenge a Rule 17(c) subpoena directed to a non-party when the subpoenaed party authorizes the government to assert his or her rights by request, by indicating its joinder in a motion to quash, or by forwarding responsive material to the government. See United States v. Martoma, 962 F. Supp. 2d 602, 605 n.4 (S.D.N.Y. 2013) (collecting cases).

Moreover, courts in the Circuit have generally agreed that a party may also demonstrate standing to challenge a Rule 17(c) subpoena directed to a non-party based on the movant's legitimate interests. See, e.g., United States v. Giampa, No. S 92 cr 437 (PKL), 1992 WL 296440, at *1 (S.D.N.Y. Oct. 7, 1992) (holding government had standing to move to quash Rule 17(c) subpoenas to non-party witness based on the government's "interest in preventing any undue lengthening of the trial, any undue harassment of [the witness] and his family, and any prejudicial over-emphasis on [the witness's] credibility"); United States v. Nachamie, 91 F. Supp. 2d 552, 559–60 (S.D.N.Y. 2000) (Scheindlin, J.) (holding government lacked standing because it had "not asserted a legitimate interest," unlike other cases where the government showed standing, for example, by asserting that it was protecting work product or vulnerable witnesses). Preventing the undue harassment of a cooperating witness is a legitimate governmental interest giving rise to standing in this context. See United States v. Nektalov, No. S2 03 cr 828 (PKL), 2004 WL 1574721, at *1 (S.D.N.Y. July 14, 2004) (citing Giampa, 1992 WL 296440, at *2–4, and Nachamie, 91 F. Supp. 2d at 560).

Against these background rules, a number of courts within this Circuit have proceeded to consider the merits of a motion to quash irrespective of any determination on standing because of an independent duty of the court to ensure the propriety of Rule 17(c) subpoenas. See, e.g., United States v. Nix, 251 F. Supp. 3d 555, 562 (W.D.N.Y. 2017) (discussing government's basis for standing and noting that, regardless of standing, the court has a duty to review subpoenas); United States v. Vasquez, 258 F.R.D. 68, 71–72 (E.D.N.Y. 2009) (same); United States v. Khan, No. 06 cr 255 (DLI), 2009 WL 152582, at *6 (E.D.N.Y. Jan. 20, 2009) (not expressly deciding standing and proceeding to merits based on duty); United States v. Weissman, No. 01 cr 529 (BSJ), 2002 WL 31875410, at *1 n.1 (S.D.N.Y. Dec. 26, 2002) (same).

The government has not put forth any evidence that either Hallac or Wellner authorized the government to assert his rights, such as by forwarding responsive materials to the government. Instead, the government argues that it has standing based on its alleged legitimate interests. This Court concludes that the government has standing to move to quash a subpoena based on its legitimate interests on these facts. The Subpoenas are directed to the government's cooperating witnesses who are expected to testify at trial. And it is the government upon whom obligations fall under Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), and 18 U.S.C. § 3500 with respect to these testifying witnesses. The government has an interest in controlling the timing of disclosures as to a cooperating witness. See, e.g., 18 U.S.C. § 3500. These are sufficiently strong and immediate interests to confer standing.

Moreover, the Court finds faulty Bergstein's analysis that the government lacks standing because "[n]one of the[] situations" listed in Nachamie, 91 F. Supp. 2d at 558–560, apply. (Dkt. 164 at 7). Setting aside that Nachamie is not binding on this Court, the Nachamie court did not urge against applying the legitimate interest analysis adopted by Giampa to new

fact patterns—it simply advised courts to avoid doing so uncritically. Nachamie, 91 F. Supp. 2d at 560 (reasoning that uncritical application would ensure government always has standing "merely by claiming that the recipient might become a witness"). Further, to the extent the Nachamie court found instructive prior cases on standing, it agreed that when subpoenaed individuals "have been publicly identified by the [g]overnment as trial witnesses," that factor speaks to the government's legitimate interests in "preventing undue lengthening of the trial, undue harassment of its witness, and prejudicial overemphasis on [the witness'] credibility." See id. (quoting United States v. Raineri, 670 F.2d 702, 712 (7th Cir. 1982)).

Even if the Court had doubts about the government's standing, the Court recognizes a duty to ensure the propriety of Rule 17(c) subpoenas, like other courts in this Circuit. See, e.g., Nix, 251 F. Supp. at 562; Vasquez, 258 F.R.D. at 71–72; Khan, 2009 WL 152582, at *6; Weissman, 2002 WL 31875410, at *1 n.1. This Court approved the issuance of Subpoenas expressly "without prejudice to the rights of the subpoenaed persons or entities." (Dkts. 145, 149). With the benefit of briefing from both sides, the Court is now in a better position to assess the appropriateness of the Subpoenas and prejudice the rights of such persons.

II. Propriety of the Subpoenas

A subpoena issued pursuant to Rule 17(c) "may order the witness to produce" designated "books, papers, documents, data, or other objects," Rule 17(c)(1), Fed. R. Crim. P., so long as they are "evidentiary," Bowman Dairy Co. v. United States, 341 U.S. 214, 219 (1951). Rule 17(c) further provides that "[t]he court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them." Rule 17(c)(1), Fed. R. Crim. P.

Rule 17(c) operates to "expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials," rather than "provide a means of discovery for criminal cases." United States v. Nixon, 418 U.S. 683, 698–99 (1974) (citing Bowman Dairy, 341 U.S. at 220)). In other words, Rule 17(c) was not intended to undermine the limited right of discovery under Rule 16, Fed. R. Crim. P., by providing "a right of discovery in the broadest terms." Bowman Dairy, 341 U.S. at 220. Consistent with this limited purpose, Rule 17(c) further provides that, "[o]n motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Rule 17(c)(2), Fed. R. Crim. P. The party seeking compliance with the subpoena must show:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'

Nixon, 418 U.S. at 699–700 (citing United States v. Iozia, 13 F.R.D. 335, 338 (S.D.N.Y. 1952) (Weinfeld, J.)). A court may quash a motion for a Rule 17(c) subpoena based on a failure to satisfy one of these prongs. Id. (listing requirements conjunctively); see United States v. Conway, 615 F. App'x 46, 48–49 (2d Cir. 2015) (holding that court "did not err" in denying subpoena when claim "fail[ed] to satisfy the relevancy prong of United States v. Nixon").

Although Bergstein contends that his motion still satisfies the Nixon standard, he first suggests that the Court should instead apply the more lenient standard articulated in United States v. Tucker, 249 F.R.D. 58, 66 (S.D.N.Y. 2008) (Scheindlin, J.), for criminal defendants requesting production from a non-party on the eve of trial and when "the defendant has an articulable suspicion that the documents may be material to his defense." "[T]he overwhelming

- 7 -

majority of district courts in the Second Circuit have [instead] applied the Nixon analysis to such requests" because the relaxed Tucker standard is not prevailing law of the Circuit. United States v. Pena, No. 15 cr 551 (AJN), 2016 WL 8735699, at *1 (S.D.N.Y. Feb. 12, 2016) (citing United States v. Barnes, No. S9 04 cr 186 (SCR), 2008 WL 9359654, at *3 (S.D.N.Y. Apr. 2, 2008)); cf. United States v. Stein, 488 F. Supp. 2d 350, 365 (S.D.N.Y. 2007) (acknowledging courts' application of Nixon "almost without exception," but questioning its "mindless application in circumstances to which the principle never was intended to apply"). The Second Circuit declined to decide whether the Tucker standard is more appropriate than the Nixon standard in this context when a defendant's "speculative showing failed to meet even the 'articulable suspicion' requirement of Tucker." United States v. Barnes, 560 F. App'x 36, 40 n.1 (2d Cir. 2014) (citing Tucker, 249 F.R.D. at 66).

With no compelling reason to reject the prevailing law of the Circuit regarding defense subpoenas to non-parties, this Court applies the Nixon standard to the Subpoenas. Under Nixon, Bergstein failed to make the requisite showing that (i) the materials sought by the Subpoenas are not otherwise procurable reasonably in advance of trial and (ii) the Subpoenas are not intended as a general "fishing expedition." See Nixon, 418 U.S. at 699–700.

First, the proponent of a Rule 17(c) subpoena may have reason to believe certain materials exist, but the proponent must still "specifically identify the materials [the proponent] is seeking to bear out his [or her] suspicions under Rule 17(c)." Pena, 2016 WL 8735699, at *3 (applying Nixon, 418 U.S. at 699–700). When "many" of the subpoenaed materials are obtainable through the discovery process, a subpoena contravenes Nixon's requirement that subpoenaed materials must not be otherwise procurable in advance of trial by the exercise of due diligence. See United States v. Boyle, No. 08 cr 523 (CM), 2009 WL 484436, at *3 (S.D.N.Y.

Feb. 24, 2009) (applying Nixon, 418 U.S. at 699–700, and noting that "little or no diligence" would be required to procure discoverable subpoenaed material from the government in advance of trial). A party's Rule 17(c) subpoena may not evade specificity in the hope "that something useful will turn up" in its reach. Barnes, 2008 WL 9359654, at *4 (quoting United States v. Sawinski, No. 00 cr 499 (RPP), 2000 WL 1702032, at *2 (S.D.N.Y. Nov. 14, 2000)).

Here, Bergstein attempts to reach "all documents" and "all communications" within defined categories from Hallac and Wellner. While there may be circumstances in which a request for "all documents" or "all communications" in certain categories is appropriate under Rule 17(c), the Subpoenas do not fit that description. The parties do not contest that there is overlap between the reach of the Subpoenas and the government's productions during discovery. To the extent that Bergstein argues he is entitled to "all" and not "most" of the subpoenaed materials, he would be entitled to reach by subpoena those unobtained materials that he is able to reasonably specify as part of his burden under Nixon. Neither the Subpoenas nor Bergstein in his briefing successfully distinguishes the materials that the government already produced from the materials to which Bergstein claims entitlement by subpoena.[2] Nixon's specificity requirement does not permit a defendant to force a non-party by subpoena to replicate all or part of the government's discovery productions in the hope that the non-party's production will produce something more.

Additionally, Bergstein's contention that the subpoenaed material "may not be exactly the same as what the government sought from [Hallac and Wellner]" (Dkt. 164 at 7) further runs afoul of Nixon by suggesting that the Subpoenas are part of a "fishing expedition"

---

[2] Bergstein offers two illustrative examples of unobtained evidence that he seeks through the Subpoenas. (Dkt. 164 at 6). Examples of some specific materials the Subpoenas seek does not make the Subpoenas themselves sufficiently specific. Moreover, despite highlighting these examples, Bergstein does not address whether or to what extent these exemplary materials are themselves admissible and relevant under Nixon.

for unspecified materials. Accordingly, Bergstein failed to show that the Subpoenas satisfy Nixon's requirements, and it therefore would be unreasonable or oppressive within the meaning of Rule 17(c)(2), Fed. R. Crim. P, to require compliance with the Subpoenas.

As a final matter included the instant motion, Bergstein claims that "the government is not meeting its obligations to provide exculpatory information as to [Hallac and Wellner]" by failing to produce "any reports or written statements" by them in meetings with government agents. (Dkt. 164 at 2). The government acknowledged its obligations under Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), and 18 U.S.C. § 3500[3] several times during this case (February 2, 2017 Tr. (Dkt. 59) 15:6–16:16, 20:24–22:1, 26:12–28:10; May 4, 2017 Tr. (Dkt. 110) 9:14–16; 28:24–29:12), and does so again in the instant motion (Dkt. 174 at 7 n.4). Under the present circumstances, the Court has no reason to doubt the government's representation of compliance with its obligations.

CONCLUSION

For the reasons set forth above, the government's motion to quash the Rule 17(c) subpoenas directed to Hallac and Wellner is GRANTED. The Court reserves judgment on the government's motion to quash the Rule 17(c) subpoena directed to Parmar.

SO ORDERED.

_P. Kevin Castel_
United States District Judge

Dated: New York, New York
December 28, 2017

---

[3] Pursuant to an Order of the Court, the government advised the Court as to when it would produce its section 3500 materials. (Dkt. 160). It agreed to do so, subject to certain conditions, three weeks before trial. (Dkt. 160 at 1 n.2).

- 10 -