IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>- vs –<br><br>DAVID R. BERGSTEIN, *et al*,<br><br>Defendant. | Case No. 16-cr-746-PKC |

**BRIEF RE WITNESS PAUL PARMAR'S ASSERTION OF FIFTH AMENDMENT PRIVILEGE AGAINST SELF-INCRIMINATION**

| | |
|---|---|
| Thomas H. Bienert, Jr.<br>BIENERT, MILLER & KATZMAN, PLC<br>903 Calle Amanecer, Suite 350<br>San Clemente, California 92673<br>T: (949) 369-3700<br>E-mail: tbienert@bmkattorneys.com<br><br>*Counsel to David Bergstein* | Andrew L. Fish<br>SATERLEE STEPHENS LLP<br>230 Park Avenue, 11th Floor<br>New York, NY 10169<br>T: (212) 404-8761<br>E-mail: afish@ssbb.com<br><br>*Counsel to David Bergstein* |

Dated: February 8, 2018

Pursuant to this Court's February 5, 2018 Order, Defendant David Bergstein submits this Memorandum addressing whether Paul Parmar should be permitted to refuse to answer questions at trial pursuant to his Fifth Amendment privilege against self-incrimination. For the reasons explained below: (1) Parmar has no valid privilege for testimony related to any of his activity related to the charged conduct between 2010 and 2016 because he was acting as a government informant during that time and is therefore immune from prosecution; (2) Parmar has no valid privilege for testimony related to conduct on or before February 8, 2012, because such conduct is outside of the applicable limitations period; and, (3) even assuming that Parmar is not otherwise immune from prosecution, the Court should order the government to immunize Parmar for testimony on any relevant topic for which Parmar is able to assert a valid claim of privilege.

A.  RELEVANT BACKGROUND

Paul Parmar and his counsel appeared before this Court pursuant to a defense subpoena on the first day of trial, February 5, 2018. The Court held a brief hearing outside the presence of the jury panel to determine if Parmar would actually invoke the privilege. Parmar asserted his Fifth Amendment privilege to questions about:

- His communications with FBI agent Bieniek in 2013 about the FBI bringing a criminal case against Bergstein;
- Bergstein's 2013 lawsuit against Parmar to get "MD Tablet" back and Parmar's efforts to stop that lawsuit by having Bergstein criminally indicted;
- Whether Parmar teamed up David Molner to have Bergstein indicted, so they (Parmar and Molner) would prevail in their lawsuits against Bergstein;
- Whether Parmar was paid millions of dollars to provide MD Tablet to Arias Libra and Pineboard pursuant to contract, and whether he still possessed those assets;
- Whether Parmar was a paid informant for the FBI from 2010 to the present, the last time he provided information to the government as an informant and whether he possessed any documents relating to his informant status; and,
- Whether Parmar recorded all of his calls with Bergstein, Hallac and Wellner, and whether he provided those recordings to the FBI.

Parmar made it clear that he would assert his Fifth Amendment privilege in response to any question about his business relationship with Bergstein. [2/5/18 TR. 27-31] In response, the Court

ordered 1) Bergstein to submit a written submission on the government and Parmar's counsel by close of business February 8, 2) the government to respond by February 14, and 3) Parmar to return to Court on February 20 at 9:30 a.m.  [2/5/18 TR. 31-32]

### B.  AVAILABILITY OF THE PRIVILEGE

> [The] privilege against self-incrimination extends to answers that in themselves would support a federal criminal conviction as well as those that would "furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime."  Nevertheless, the claimant of the privilege must be "confronted by substantial and real, and not merely trifling or imaginary, hazards of incrimination."  Ultimately, it is for the trial judge to determine whether "a responsive answer to the question (posed) or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result."

*United States v. Zappola*, 646 F.2d 48, 52–53 (2d Cir. 1981) (citing *Hoffman v. United States*, 341 U.S. 479, 486-87 (1951) and *United States v. Apfelbaum*, 445 U.S. 115, 128 (1980)).

### 1.  The Privilege Is Not Available for Testimony Related to Parmar's Work as a Government Informant

Parmar has asserted the Fifth Amendment related to *any* question concerning his business relationship with Bergstein, as well as his efforts to get Bergstein indicted.  But defense investigation suggests that Parmar was working as a government informant prior to, during, and after the conduct alleged in the indictment.  As an informant, Parmar is protected from prosecution for his conduct during the scope of that agency.  *Zappola,* 646 F.2d at 53.

> [A] witness could not legitimately fear prosecution by state or federal authorities based on his answers to questions of limited scope because the witness could not be found to have possessed the requisite *mens rea* where he acted in an undercover capacity for federal authorities.

*Id.* at 54 (citing *United States v. Damiano,* 579 F.2d 1001, 1002-1003 (6th Cir. 1978)). To the extent Parmar was an informant, he has no valid privilege.  Therefore, in order to evaluate Parmar's privilege claim, the Court must hold a hearing and make factual findings on what time periods Parmar was acting as an informant and what was the scope of his agency.

The defense has presented evidence that:

- In 2010, Parmar was working with FBI Special Agent Wymer.  Parmar and Agent Wymer together pressured Sean Edrington off UBS Financial Services to forego foreclosing on Parmar's Colts Neck estate, and Agent Wymer again

contacted Mr. Edrington about this matter sometime in 2012.  *See* Edrington Declaration (Exhibit 8).

- In the spring or early summer of 2013, Parmar worked with numerous FBI agents to pressure Michael Enriquez into cooperating with the FBI's investigation into Bergstein.  *See* Enriquez Declaration (Exhibit 9).

- In August 2013, Parmar wrote FBI Special Agent Bieniek (the case agent here) that "very important three things" [sic] about prosecuting Bergstein.  *See* 8/20/13 Parmar email (Exhibit 6).

- Parmar recordings under-cover for the FBI on March 27 and 28, 2014, March 12 and 13, 2015 and November 2016.[1]  Notably, on the March 27, 2014 recording, Parmar was fitted with a recording device by FBI Special Agent Patrick Duffy and then proceeded to meet with Hallac and his counsel and interrogate them about the allegations in the Indictment.  *See* Transcript of March 27, 2014 meeting (Exhibit 7).

Thus, at a minimum, there is prima facie evidence that Parmar worked as a government informant at certain times between 2010 through 2016.  Parmar's testimony related to his actions as a government agent would not violate his Fifth Amendment rights because he cannot be prosecuted for that conduct.  Accordingly, a "blanket" assertion of the privilege is insufficient.  *Zappola*, 646 F.2d at 54; *United States v. Bowe*, 698 F.2d 560, 566 (2d Cir. 1983).

The defense has been shut down in its attempts to establish additional occasions throughout this time period where Parmar acted as a government agent.  The defense's numerous written requests for such information from the government have been rebuffed.  *See* correspondence dated 12/22/16, 1/4/17, 1/20/17, 2/6/17, 3/7/17, and 12/4/17 (collectively, Exhibit 10).  The defense's discovery motion re Parmar (Doc. No. 69) was denied.  Doc. No. 102.  The defense request for a Rule 17(c) subpoena directly to Parmar for information about his cooperation was denied by the Court on October 24, 2017.  But the issue of Parmar's informant status must now be resolved.  So Bergstein respectfully requests that the Court order the government to produce:

---

[1] The government produced these recordings at Bates Nos. USAO_WC_00169915-USAO_WC_00169921 and USAO_WC_176235.

- All cooperation agreements with Parmar from 2010 through 2016, with *any* federal law enforcement agency in the country; depending upon the wording, such agreements can bind all U.S. Attorney's Offices.  *See, e.g., United States v. Van Thournout*, 100 F.3d 590, 594 (8th Cir. 1996) ("Absent an express limitation, any promises made by an Assistant United States Attorney in one district will bind an Assistant United States Attorney in another district.").

- Evidence of any express or tacit understanding between Parmar and any federal law enforcement agency in the country as to whether Parmar could be subject to prosecution for his activities between 2010 and 1016; and,

- All communications that relate to either Parmar's or a federal law enforcement agencies' understanding that Parmar would not be subject to prosecution for his activities between 2010 and 2016.

This Court and the defense should not have to rely on Parmar's recollections alone if the government has evidence of their relationship.

### 2. The Privilege Is Not Available for Conduct Occurring Before February 8, 2012 Because the Statute of Limitations Has Lapsed.

A witness cannot refuse on Fifth Amendment grounds to testify about conduct that cannot be punished because the statute of limitations has lapsed.  *See Brown v. Walker*, 161 U.S. 591, 603-04 (1896); *United States v. Feldman*, 136 F.2d 394, 399 (2d Cir. 1943); *United States v. Forbes*, 790 F.2d 403, 409 (2d Cir. 2015) ("The statute of limitations as to any crimes allegedly committed by Bell has now run . . . which means that his privilege against self-incrimination has also been effectively "waived.").  The general five-year statute of limitations applies to most fraud offenses, including conspiracy and wire fraud.  18 U.S.C. § 3282.  A six-year statute of limitations applies to securities fraud offenses. 18 U.S.C. § 3301. Therefore, as to any criminal offense that was complete as of February 8, 2013 (or any securities fraud offense that was complete as of February 8, 2012) prosecution is barred.  Accordingly, Parmar may not properly invoke his Fifth Amendment privilege for conduct that predates February 8, 2012.

## C. THE COURT SHOULD DEMAND THE GOVERNMENT IMMUNIZE PARMAR OR FACE DISMISSAL

18 U.S.C. § 6003 permits a district court to order a witness to testify notwithstanding the witness' invocation of the privilege against self-incrimination, but only "upon the request of the United States attorney for such district. . . ."  18 U.S.C. § 6003(a).  Where a witness is compelled to testify under § 6003(a), neither his testimony nor information "directly or indirectly derived from such testimony" may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order."  18 U.S.C. § 6002.

The Second Circuit has held that the statute leaves the decision whether to seek immunity of a witness to the government.  *United States v. Bahadar*, 954 F.2d 821, 826 (2d Cir. 1992).  The Court does not have the power to directly order witness immunity.  However, the Court does have the power to "subject the government to certain choices of action" in the event it refuses to immunize a defense witness, including forcing the government to choose whether to immunize a defense witness or have the indictment dismissed entirely.  *Id*. (describing "carrot-and-stick" approach).  Thus, as a practical matter the Court does have the power to force the government to immunize defense witnesses.  *See Id*. at 826.

Courts in the Second Circuit apply "a three-part test for requiring the government to grant defense witness immunity at the risk of dismissal of the indictment."  *Id*.  First, the district court must find that the government has engaged in discriminatory use of immunity to gain a tactical advantage or, through its own overreaching, has forced the witness to invoke the Fifth Amendment.  Second, the witness's testimony must be "material, exculpatory, and not cumulative."  Third, the testimony must be unobtainable from any other source.  *Id.*

### 1. Discriminatory Use Of Immunity To Gain A Tactical Advantage Or Overreaching

The government has exerted control over the key percipient witnesses by (1) entering into cooperation deals with Hallac and Wellner, and (2) actively blocking defense efforts to use Rule 17 subpoenas to seek relevant, exculpatory material from them.  As to Parmar, the government has helped him quash Rule 17 subpoenas and has steadfastly refused to explain its relationship with him.  (At a minimum, the government has no intention of prosecuting him, so his concerns of self-incrimination are "trifling [and] imaginary.")  The government's conduct overall, and their de facto

6

control of witnesses, demonstrates why judicial intervention is necessary. *See United States v. Anglada*, 524 F.2d 296, 300 (2d Cir. 1975) (noting that witness who invoked Fifth Amendment "had refused to be interviewed by defense counsel, but had spoken freely to the prosecutor and the police about the events of the case" and suggesting that the trial judge should "take a harder look at any blanket assertion of privilege and also at the possibility of allowing some carefully phrased, limited questions by Anglada's counsel."). This is a unique circumstance that justifies the Court using its supervisory authority to level the playing field in order to ensure Bergstein's Fifth and Sixth Amendment rights to present a defense.

### 2. Testimony Must Be "Material, Exculpatory, And Not Cumulative"

Parmar's testimony is material because he is at the heart of the transaction that the government claims to be fraudulent. His representations about the existence of the medical billing assets motivated Bergstein (in good faith) to negotiate the deal, and his failure to perform is what caused the deal to fail. His testimony is exculpatory because it shows Bergstein acted in good faith and thus negates the government's claim that he acted willfully. *See United States v. Certified Envtl. Servs., Inc.,* 753 F.3d 72, 90 (2d Cir. 2014) (When it comes to good faith, "the definition of relevance under Fed. R. Evid. 401 is very broad."); *see also United States v. Litvak,* 808 F.3d 160, 190 (2d Cir. 2015) (reversing district court's exclusion of evidence because the evidence was relevant to whether Litvak "held an honest belief that his conduct was not improper or unlawful."). In fact, it is essential to rebutting the wire fraud charges because it shows he did not intend to harm the investors. *See United States v. D'Amato*, 39 F.3d 1249, 1256–57 (2d Cir. 1994) ("Because the defendant must intend to harm the fraud's victims, [m]isrepresentations amounting only to a deceit are insufficient to maintain a mail or wire fraud prosecution. Instead, the deceit must be coupled with a contemplated harm to the victim.").

Moreover, Parmar's testimony will establish that he knew that if he said things to the government to get it to investigate Bergstein, then the government would not question his motives, his honesty and would not investigate him. His March 27, 2014 email to the case agent in this case about investigating Bergstein occurred against the following backdrop:

- On May 14, 2013, Bergstein had filed a lawsuit against Parmar for return of the medical business assets and to protect the investors in this case. *See* May 14, 2013 Complaint (Exhibit 1);

7

- In May and June 2013, Parmar joined forces with David Molner, who was also a defendant in Bergstein's action, to have Bergstein indicted so he could not prosecute his law suit. *See* May and June 2013 text messages between David Molner and Paul Parmar (Exhibits 2-4); and,

- In July and August 2013, Parmar was desperate to settle that action with Bergstein. *See* July and August 2013 text messages from Paul Parmar to Bergstein (Exhibit 5).

When Parmar reached out to the case agent, he was obviously comfortable saying things to the FBI to get them to do his bidding. He somehow convinced the FBI to help convince UBS Financial Services to forego foreclosing on his Colts Neck estate. *See* Exhibit 8. And he worked with the FBI in a ham-handed (and ultimately unsuccessful) attempt to coerce Mike Enriquez to cooperate against Bergstein. *See* Exhibit 9.

The jury must be allowed to consider evidence of how Parmar manipulated this investigation as a factor in deciding how much weight to give the government's other evidence, e.g., Hallac and Wellner's credibility and the completeness of its documentary evidence. *See Kyles v. Whitley,* 514 U.S. 419, 445 (1995) (*Brady* material includes evidence that could be used to attack "the thoroughness and even the good faith of the investigation"). *See also* Doc. No. 197 at 7-9. Parmar was central to the deal referenced in the Indictment, he pulled the plug on the deal, he then participated in the Bergstein investigation to gain a strategic advantage over Bergstein in separate litigation about the deal, and he got rich(er) off of the failed deal. In short, Parmar's testimony is essential to protecting Bergstein's right to present a defense. *See Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'") (citations omitted): see *Washington v. Texas* (witness unavailability due to statute disqualifying co-defendant testimony violated Due Process); *Chambers v. Mississippi* ("mechanistic" application of rules of evidence to preclude witness testimony deprived defendant of his Due Process right to present a complete defense).

Lastly, Parmar's testimony is not cumulative. As a direct participant in the transactions for which Bergstein is now on trial, Parmar's testimony about his intentions and conduct related to those transactions, his collusion with the government to have Bergstein prosecuted is essential.

8

3. <u>Unobtainable From Any Other Source</u>

There is no other way for the defense to present Parmar's testimony other than calling him. The defense has been completely shut down in its attempts obtain documentary evidence about his role in causing investor losses and his focusing the FBI's attention on Bergstein to further his personal agenda. In short, Parmar's testimony is central to Bergstein's ability to present a defense.

February 8, 2018

/s/ Thomas H. Bienert, Jr  
Thomas H. Bienert, Jr.  
BIENERT, MILLER & KATZMAN, PLC  
*Counsel to David Bergstein*

/s/ Andrew L. Fish  
Andrew L. Fish  
SATERLEE STEPHENS LLP  
*Counsel to David Bergstein*

426203-1