

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

February 14, 2018

By ECF

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *United States v. David Bergstein*, 16 Cr. 746 (PKC)

Dear Judge Castel:

      The Government respectfully submits this letter in response to defendant David Bergstein's motion to compel Paul Parmar to testify on the ground that his Fifth Amendment privilege is not available for work he purportedly performed as a Government agent and, in the alternative, to compel the Government to immunize Parmar. For the reasons that follow, Bergstein's motion is meritless and should be denied.

    **A. Defendant's Argument that Parmar is Barred from Asserting his Fifth Amendment Rights is Without Merit**

      Bergstein argues first that Parmar "has no valid privilege for testimony related to any of his activity related to the charged conduct between 2010 and 2016 because he was acting as a government informant during that time and is therefore immune from prosecution." (Mot. 2). Bergstein's argument is factually incorrect and without merit.

      The Supreme Court has left no doubt that the Fifth Amendment's protection against compelled self-incrimination "must be accorded liberal construction." *Hoffman* v. *United States*, 341 U.S. 479, 486 (1951). "[T]o sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *United States* v. *Lumpkin*, 192 F.3d 280, 285 (2d Cir. 1999). Moreover, "the privilege extends not only to those disclosures that in and of themselves would support a conviction, but also to those that might 'furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime.'" *Id*. (quoting *Hoffman* v. *United States*, 341 U.S. at 486). To deny a witness the right to assert the privilege, a court must find it "perfectly clear . . . that the witness is mistaken, and that the answer(s) cannot possibly have such tendency to

incriminate." *Hoffman*, 341 U.S. at 488 (internal quotation and citations omitted).  Moreover, once the determination is made that a response to the questions would tend to incriminate a witness, the likelihood of such prosecution is largely irrelevant. *Estate of Fisher* v. *Commissioner*, 905 F.2d 645, 649 (2d Cir. 1990) (speculation concerning the likelihood of prosecution is unwarranted; the question is "whether answering the question would tend to incriminate the witness").

The privilege's protection extends to "witnesses who have 'reasonable cause to apprehend danger from a direct answer'" to a question posed to him or her, *Ohio* v. *Reiner*, 532 U.S. 17, 21 (2001) (quoting Hoffman, 341 U.S. at 486), so long as the "hazards of incrimination" are "'substantial and real, and not merely trifling or imaginary'." *United States* v. *Zappola*, 646 F.2d 48, 53 (2d Cir. 1981) (quoting *United States* v. *Apfelbaum*, 445 U.S. 115, 128 (1980)).

In attempting to overcome this well-established law, Bergstein relies on a number of erroneous factual allegations.  Bergstein is simply wrong in claiming that "Parmar's testimony related to his actions as a government agent would not violate his Fifth Amendment rights because he cannot be prosecuted for that conduct." (Mot. 4).  As this Court held in connection with the defendant's motion to compel additional Parmar-related discovery, "[t]here is no evidence that Parmar was acting at the government's direction with respect to the matters at issue, particularly with regard to the Weston transactions." (May 4, 2017 Tr. at 22).[1]  Nor is there any evidence that the Government assured Parmar or led him to believe that he was immune from prosecution. (Mot. 3-4).  Accordingly, there is no need to hold an evidentiary hearing as Bergstein suggests.

Bergstein also incorrectly argues that Parmar cannot assert his Fifth Amendment rights with respect to conduct occurring more than six years ago because the statute of limitations has elapsed.  To the extent Parmar's conduct predating February 2012 (1) was part of a conspiracy or a continuing offense or (2) could render statements made by Parmar after February 2012 false or misleading, Parmar could be prosecuted for conduct occurring before February 2012.  It is black letter law, for example, that conspiracy and wire fraud are continuing offenses.  *See United States* v. *Tannenbaum*, 934 F.2d 8, 12 (2d Cir. 1991) (holding that crime of conspiracy is a continuing offense); *United States* v. *Kim*, 246 F.3d 186, 191-92 (2d Cir. 2001) (holding that wire fraud is a continuing offense).  In fact ,the Indictment, which charges conspiracy from in or about 2011 through in or about 2012, alleges an overt act in May 2012.  In these circumstances, any conduct that took place within the time period of the charged conspiracy would be within a six-year statute of limitations.

### B. Bergstein's Motion to Compel the Government to Immunize Parmar Should be Denied

Bergstein next argues that the Government should be compelled to immunize Parmar on the ground that the Government has engaged in the "discriminatory use of immunity to gain a tactical advantage."  (Mot. 6).  His argument is frivolous.

---

[1] The Government refers to its April 5, 2017 *ex parte* letter to the Court regarding Paul Parmar.

The Government "is under no general obligation to grant use immunity to witnesses the defense designates as potentially helpful to its cause but who will invoke the Fifth Amendment if not immunized." *United States* v. *Ebbers*, 458 F.3d 110, 118 (2d Cir. 2006). Such relief is warranted only in "extraordinary circumstances." *United States* v. *Diaz*, 176 F.3d 52, 115 (2d Cir. 1999). The Second Circuit has held that "situations in which the United States is required to grant statutory immunity to a defense witness are few and exceptional. So few and exceptional are they that, in the nearly thirty years since establishing a test for when immunity must be granted, we have yet to reverse a failure to immunize." *United States* v. *Ferguson*, 676 F.3d 260, 291 (2d Cir. 2011) (internal quotation marks omitted). Because immunity is "preeminently a function of the Executive Branch," *United States* v. *Turkish*, 623 F.2d 769, 776 (2d Cir. 1980), "as a general rule the Government may not be required to confer immunity for the benefit of the defense." *United States* v. *Dolah*, 245 F.3d 98, 105 (2d Cir. 2001). "Indeed, there do not appear to be any published decisions within the Second Circuit in which a district or appellate court has compelled the Government to grant immunity to a defense witness." *United States* v. *Tavarez*, 2015 WL 1137550, at *6 n.1 (S.D.N.Y. Mar. 12, 2015), *aff'd*, 648 F. App'x 16 (2d Cir. 2016).

In assessing claims for compelled immunity of defense witnesses, courts consider whether "(1) the government has engaged in discriminatory use of immunity to gain a tactical advantage or, through its own overreaching, has forced the witness to invoke the Fifth Amendment; and (2) the witness' testimony will be material, exculpatory and not cumulative and is not obtainable from any other source." *United States* v. *Ebbers*, 458 F.3d at 118 (internal quotation marks omitted). "The defendant bears the burden of showing" the existence of "extraordinary circumstances" warranting a compelled immunity order. *United States* v. *Diaz*, 176 F.3d at 115. This stringent test "ensur[es] that prosecutorial decisions concerning whom to prosecute and what evidence to present at a criminal trial will not be lightly interfered with by the judiciary." *Blissett* v. *Lefevre*, 924 F.2d 434, 441-42 (2d Cir. 1991). It also "reduces the possibility of cooperative perjury between the defendant and his witness," for "[a] person suspected of crime should not be empowered to give his confederates an immunity bath." *Id.* at 442 (internal quotation marks omitted).

Here, Bergstein's motion utterly fails to show that his request satisfies either prong of the *Ebbers* test, let alone that it constitutes the "extraordinary circumstances" precedent requires. With respect to the first prong, Bergstein cannot demonstrate that "the government has engaged in discriminatory use of immunity to gain a tactical advantage or, through its own overreaching, has forced the witness to invoke the Fifth Amendment." *Ebbers*, 458 F.3d at 118. "[I]t is not sufficient simply to show that the prosecution granted immunity to its own witnesses and not to the defendants'; the defendant must prove discriminatory use of immunity for the *purpose of gaining a tactical advantage*." *United States* v. *Triumph Capital Group, Inc.*, 237 F. App'x 625, 630 (2d Cir. 2007) (emphasis in original)); *see also United States* v. *Todaro*, 744 F.2d 5, 10 (2d Cir. 1984) ("The number of witnesses immunized by the Government, without more, would not support a finding" of selective use of immunity to gain a tactical advantage).

To date, the Government has not granted immunity to a single witness. Although Bergstein claims that the Government "entered into cooperation deals with Hallac and Wellner" (Mot. 6), Bergstein overlooks that both Hallac and Wellner pled guilty to the federal crimes they committed with Bergstein and were not immunized for that conduct. And while Bergstein argues that the Government "blocked" defense efforts to serve Parmar with a Rule 17 subpoena, Bergstein ignores

3

that the Government did not oppose Bergstein's subpoena requests to the extent they complied with *United States* v. *Nixon*, 428 U.S. 683 (1974).  In any event, it cannot be said that a motion to quash a Rule 17 subpoena involves the discriminatory use of immunity.  The Court agreed that certain of the defendant's subpoenas should be quashed.  Accordingly, because Bergstein cannot demonstrate that the Government granted immunity to anyone, much less conferred immunity in a discriminatory fashion, Bergstein's argument fails.

Bergstein likewise fails to make any showing that any of Parmar's testimony is material, exculpatory, not cumulative, and "not obtainable from any other source." *Ebbers*, 458 F.3d at 118. Bergstein argues that Parmar's testimony would be material and exculpatory because his "representations about the existence of the medical billing assets motivated Bergstein (in good faith) to negotiate the deal, and his failure to perform is what caused the deal to fail."  (Mot. 7).  For the reasons stated in the Government's December 18, 2017 motions *in limine*, such evidence is entirely irrelevant.  The Indictment alleges that Bergstein made material misrepresentations in order to induce Weston to enter into the P2 and TT loans and, among other things, misappropriate investor funds.  Whether Bergstein believed that the medical billing assets existed and Parmar ultimately "performed" his obligations after Bergstein induced the loans to be issued is entirely irrelevant to whether Bergstein acted in good faith in making the misrepresentations alleged in the Indictment.  To the extent that Bergstein argues that Parmar "colluded" with the Government (Mot. 8), there is simply no such evidence, as the Court has previously held.

Finally, the testimony that the defense seeks to elicit from Parmar is entirely irrelevant to the charged offenses.  Bergstein is charged with making material misrepresentations to induce the P2 and TT loans to be entered, in or about August 2011 and November 2011, respectively. Bergstein, however, seeks to question Parmar about (1) communications with the FBI in 2013, Bergsetin's 2013 lawsuit against Parmar to obtain assets of a medical billing company, (3) whether Parmar "teamed up with David Molder to have Bergstein indicted," (4) whether Parmar "still possessed" the medical billing assets, (5) whether Parmar was a "paid informant for the FBI from 2010 to the present," and (6) whether Parmar recorded his calls with Bergstein and others. (Mem. 2).  These matters have nothing to do with whether Bergstein committed the charged offenses and are, at bottom, attempts to attack Parmar's credibility.

For the foregoing reasons, the defendant's motion to compel the Government to immunize the defendant's son should be denied.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By:     */s/*  _____
Edward Imperatore/Robert Allen/Elisha Kobre
Assistant United States Attorneys
Southern District of New York
Tel. 212-637-2216/2599

cc:   Counsel of Record (via ECF)