# BIENERT, MILLER & KATZMAN
*A Professional Law Corporation*

February 19, 2018

**VIA ECF**

The Honorable P. Kevin Castel
United States District Court
Southern District of New York
500 Pearl Street
New York, NY, 10007-1312

    Re:    *United States v. Bergstein et al*, Case No. 16-cr-746-PKC-1

Dear Judge Castel:

    We write to present additional information to the Court in opposition to the proffered 404(b) evidence the government continues to seek to introduce at trial. As argued Thursday afternoon and for the reasons set forth below, the Court should preclude the government from introducing any additional 404(b) evidence at trial.

    **A.**    **The Government Has Misrepresented The Facts, Nature, and Complexity Of The Income Tax Issue.**

    When the issue of the government's introduction of tax evidence was discussed on Thursday, the government repeated a series of factually untrue assertions to the Court to support its argument that the Court should allow the government to introduce tax evidence at trial. Specifically, the government represented to the Court:

> What the tax returns show is that Mr. Bergstein reported no income related to these two transactions and no income from the various shell companies through which he funneled money to himself.
> Those shell companies didn't file tax returns, and we separately have two e-mails between him and his accountant where he doesn't even advise his accountant about this money.
> So this—first of all, the proof of this is really discrete because, again, we actually have tried to discuss a stipulation with the defense on this. It sounds like they're not interested, but the testimony of the IRS agent would basically be authenticating the returns. These shell companies never filed returns, and there's no income from them on Mr. Bergstein's tax returns, and [t]here's the e-mails to his accountant where he doesn't even report the money.
> …
> And I would just note that, again, they can make whatever arguments they want. What we're putting in are the returns and the certifications that show that these other entities never – these entities through which he paid himself . . . didn't file tax returns, and those entities show no income on his own returns. And in his e-mail with his own accountant, he says nothing about this money.

To:  Honorable P. Kevin Castel  
Re: *USA v. Bergstein et al*  
February 19, 2018  
P a g e | **2**

BIENERT, MILLER & KATZMAN  
A Professional Law Corporation

Tr. 1374:16-1375:5 & 1379:13-21.  The stipulation that the government asked the defense to agree to referenced in this passage states that K-Jam Media, Inc. ("KJM") and Integrated Administration ("IA") did not file income tax returns for years 2011 and 2012.  *See* Ex. 1 (Proposed Tax Stipulation).  The government has also marked as an exhibit (GX 968) a certification from the IRS that IA did not file taxes for 2011 and 2012, among other years.

In fact, the defense has learned that: (i) KJM *did* file income taxes for 2011 and 2012; (ii) these returns were produced to the government; (iii) the returns disclose that IA is a wholly owned subsidiary of KJM; and (iv) the returns disclose that KJM reported income of approximately $4 million and $3 million for 2011 and 2012, respectively.  The defense does not believe that the government ever produced these returns in discovery, but is attempting to confirm. Regardless, the government's misstatements to the Court, combined with its attempt to convince the defense to sign a stipulation on the tax information it knows to be factually false, are deeply troubling and highlight the need to exclude this evidence.

The government's cavalier understanding and/or presentation of the facts highlights the risk of placing tax return information before the jury.  Even if the government's attempt to have the defense sign a false and misleading stipulation was simply a mistake, it reinforces that the tax evidence should not be admitted at trial due to the substantial risk of juror confusion, unfair prejudice to the defendant, and minimal probative value the evidence would have.

Moreover, the government's representation to the Court that it has evidence (purportedly in the form of two emails) that Mr. Bergstein did not advise his accountant "about this money" is grossly misleading.  In fact, what Mr. Bergstein wrote to his accountant is "[f]or 2011 I do not yet know what the income is. We could shoot very high and say $2 million, although I think it is less than half of that."  GX 895.  The email says nothing about the source of income and whether it is or is not attributable to anything related to the transactions at issue in this case.  Similarly, for 2012, Mr. Bergstein wrote to his accountant listing estimated income of nearly $5 million, which included uncategorized "other income" of $500,000.  GX 894.  These emails are thus consistent with Mr. Bergstein receiving money from the transactions at issue (although it is the defense's position that this is not what these emails actually show).  And, of course, two emails in isolation out of numerous written, oral, and in-person communications do not tell the whole story; to the extent the government is permitted to introduce this evidence, Mr. Bergstein will be required (and entitled) to present countervailing evidence, which will take further time away from the core case that was actually indicted.

Putting aside the government's patently misleading characterization of the evidence, the fact remains that the question of how revenue should be treated for tax purposes is not as straight forward as the government claims.  Whether or not money received by any of the businesses at issue in this case qualifies as taxable income depends on numerous factors, including but not limited to whether it was repayment of a loan, reimbursement for advances made, or whether funds simply flowed through to another individual or entity.[1]  Expert testimony would be necessary to

---

[1] The government also paraphrased the defense's opening statement as taking the position that Mr. Bergstein was entitled to income for services provided.  Tr. 1374 at 14-16.  In fact, the defense

To:  Honorable P. Kevin Castel  
Re: *USA v. Bergstein et al*  
February 19, 2018  
P a g e | **3**

BIENERT, MILLER & KATZMAN  
A Professional Law Corporation

explain the tax consequences of these transactions so that the jury is not mislead to the extent this evidence is allowed.

For all these reasons, and the reasons we have previously presented to the Court, the Court should not permit the government to introduce any income tax evidence in this case.

**B.   The Court Should Not Permit The Government To Introduce Any Further Evidence Regarding Mr. Bergstein's Unindicted Business Dealings.**

The government has devoted a substantial portion of this trial focusing not on the charged transactions, but on alleged conduct from ten years ago. The government has improperly elicited from its witnesses testimony that they believe Mr. Bergstein is of bad character. *See*, *e.g.*, Tr. at 1270 ("Well, I didn't believe in Mr. Bergstein was a trustworthy individual and I didn't want Dr. Swartz to be associated with him in any way"); *see also* Tr. at 1279 ("I advised Dr. Swartz that he as well as the family and childhood trusts should not invest in any fund that was either managed or controlled by Mr. Bergstein or any associate of Mr. Bergstein [because] I didn't feel that Mr. Bergstein was a trustworthy individual."). The government has also put on witness after witness to testify generally, including through un-confronted hearsay, that Mr. Bergstein is someone who borrows money and does not repay it in the normal course, in transactions completely unrelated to and predating the charged conduct. *See, e.g.*, Tr. at Tr. 996:1-12, 1278:8-18, 1279:13-25; *see also* GX 653. The government has been permitted to present the jury with impermissible character evidence improperly treated as Rule 404(b) evidence.

Conversely, the Court has prevented the defense from eliciting testimony from the government's witnesses on whether they received repayment in connection with the transactions actually alleged in the Indictment. *See, e.g.*, Tr. at 1045:13-1047:7 (Testimony of Ian Hilton). Mr. Bergstein is being unfairly prejudiced by the Court allowing the government to introduce evidence and testimony of his purported failure to repay funds in unrelated transactions, which the government is offering for the purpose and effect of impugning Mr. Bergstein's character, while the Court prohibits the defense from introducing evidence of Mr. Bergstein's repayment of proceeds directly at issue in the case. This is all the more true with respect to Mr. Hilton's testimony, because the funds at issue were loaned under an agreement that did not mature for 5 years (i.e., until 2016).

---

stated, among other things, that in connection with these transactions, Mr. Bergstein put into place a team of lawyers, staffers, and technical people, and fronted expenses, in addition to being compensated for services provided. *See* Tr.74:10-75:16. This general statement in opening argument makes clear that the defense is about more than just Mr. Bergstein being personally entitled to fees for services provided—companies were working on these deals and entitled to be paid for their work. In any event, the government continues to incorrectly assert that Mr. Bergstein funneled money through various businesses, including KJM and IA, to mask the alleged misappropriation of funds; in fact, these and other businesses provided legitimate services and advanced funds, and were entitled to compensation and reimbursement for the same. Once that money was legitimately received as compensation or reimbursement, what happened to it thereafter is irrelevant.

To: Honorable P. Kevin Castel  
Re: *USA v. Bergstein et al*  
February 19, 2018  
P a g e | **4**

BIENERT, MILLER & KATZMAN  
A Professional Law Corporation

The evidence the government has been permitted to introduce regarding the Sheridan transaction is likewise improper. The government urged the Court to permit this evidence as Rule 404(b) material, but it should not have been admitted as such. As the testimony of Doug Martin made clear, the transactions with Stephens Inc. related to Sheridan were far more complex than the government attempted to characterize them—i.e., as simply a series of loans that went unpaid. Instead, the evidence shows a situation in which Stephens' equity was lost from the outset (prior to Mr. Bergstein's involvement), and a lender (DB Zwirn) misrepresented the true value of Sheridan while it was inducing others (including Mr. Bergstein) to infuse upwards of $8 million of additional value that was ultimately wiped out. *See e.g.* DX Z112.

Closely related to the Stephens Inc. evidence the government has already been allowed to introduce is evidence regarding transactions with DB Zwirn. The government has indicated its continued intention to call former DB Zwirn executive Eileen Burke. The Court should preclude any testimony, live or otherwise, from Ms. Burke. The Court and the jury have already heard a lot about Ms. Burke and DB Zwirn through the testimony of Doug Martin. Based on a review of Ms. Burke's 3500 material, it appears she will likely testify regarding certain loans DB Zwirn made to certain of Mr. Bergstein's companies (including overlap regarding the Sheridan transactions already in evidence), to say those loans were not repaid. These loans have nothing to do with the indicted transactions, and the government is only seeking to introduce them to pile on with the same type of evidence it has already been permitted to introduce under the auspices of Rule 404(b). As it did with the Stephens Inc./Sheridan evidence, the government appears intent on trying to introduce a narrow sliver of relevant evidence to paint Mr. Bergstein in a negative light, while the defense will be required to present substantial rebuttal evidence, including testimonial and documentary evidence, to prove otherwise to the jury. This will include evidence showing that Ms. Burke misrepresented the value of Sheridan to induce Mr. Bergstein to participate in the transaction, overstating its value by more than $20 million. It will also require the presentation of evidence demonstrating that Mr. Bergstein, through certain of his businesses, had legitimate loans that were entitled to be repaid, independent of any funds lent by DB Zwirn.

For example, the defense will be required to call former principles of Sheridan, who will testify as to their dealings with both DB Zwirn and Stephens Inc. before, during, and after Mr. Bergstein's involvement. The defense would also need to call an expert on mezzanine and film financing, as well as media asset valuations, to fully explain all relevant factors surrounding the transactions at issue. Additionally, substantial evidence regarding DB Zwirn's business practices, as well as its liquidation (which followed shortly after the subject transactions), are also necessary to defend against the government's purported Rule 404(b) evidence.

    **C.**    **The Court Should Declare A Mistrial Based On The Evidence Admitted To Date.**

In light of the purported Rule 404(b) evidence that the Court has allowed the government to introduce to date, combined with the Court's various rulings preventing the defense from introducing evidence in support of theory of defense and rebut this evidence, the Court should declare a mistrial. At this point, the government has been permitted to introduce a substantial

| | |
|---|---|
| To: Honorable P. Kevin Castel<br>Re: *USA v. Bergstein et al*<br>February 19, 2018<br>P a g e | **5** | BIENERT, MILLER & KATZMAN<br>A Professional Law Corporation |

amount of unduly prejudicial evidence, and there is nothing that can be done to "unring" the bell with the jury.

To the extent the Court does not declare a mistrial, the Court should preclude the government from introducing any of its additional proffered Rule 404(b) evidence. The government's efforts to use evidence of collateral matters to denigrate Mr. Bergstein's character and distract from the charged crimes must end. The defense continues to object to the government's purported Rule 404(b) evidence for the reasons previously stated; but at this point, the Court should also preclude the government from introducing any additional such evidence under Rule 403 because its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, *and* needlessly presenting cumulative evidence.

In the event the Court permits the government to continue to introduce its proffered Rule 404(b) evidence, the Court must allow the defense to introduce evidence necessary to rebut the additional evidence presented by the government, as well as evidence necessary to rebut the evidence the government has already been permitted to introduce.

Respectfully Submitted,

| | |
|---|---|
| /s/ Thomas H. Bienert, Jr | /s/ Andrew L. Fish |
| Thomas H. Bienert, Jr. | Andrew L. Fish |
| BIENERT, MILLER & KATZMAN, PLC | SATERLEE STEPHENS LLP |
| | |
| *Counsel to David Bergstein* | *Counsel to David Bergstein* |