*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 20, 2018

**BY ECF**

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    **United States v. David Bergstein, 16 Cr. 746 (PKC)**

Dear Judge Castel:

      The Government respectfully writes in opposition to David Bergstein's February 20, 2018 motion for reconsideration of the Court's ruling that Bergstein's tax returns and evidence concerning Bergstein's scheme involving the investment firm DB Zwirn were admissible pursuant to Federal Rule Evidence 404(b). Bergstein's motion raises no new facts and is simply a re-hash of arguments this Court has already considered and appropriately rejected. Accordingly, Bergstein's motion, which does not even attempt to satisfy the requirements for reconsideration, is meritless and should be denied.

      **I.**    **Applicable Law**

      The standard for granting a motion for reconsideration is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted) (discussing a motion under Rule 59(e), Fed R. Civ. P.). "A motion for reconsideration should be granted only when the defendant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust, 729 F.3d 99, 104 (2d Cir. 2013) (citation omitted). It is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." Analytical Surveys, 684 F.3d at 52 (citation omitted). The decision to grant or deny the motion for reconsideration is within "the sound discretion of the district court." Aczel v. Labonia, 584 F.3d 52, 61 (2d Cir. 2009) (citation omitted).

      **II.**    **Discussion**

      Bergstein does not come close to satisfying the requirements for reconsideration of the Court's rulings that the tax return evidence and evidence of the film scheme are admissible.

As an initial matter, Bergstein's motion for re-consideration is simply a re-hash of arguments that Bergstein has already made in his December 2017 adjournment request, his opposition and sur-opposition briefs in response to the Government's motions *in limine*, and oral argument on January 25, 2018.  The Court fully considered these arguments and rejected them, first in denying Bergstein's adjournment request, and then in granting the Government's motion to admit the evidence pursuant to Rule 404(b).  Bergstein identifies no new facts, much less any "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Kolel Beth Yechiel Mechil of Tartikov, Inc., 729 F.3d at 104 (2d Cir. 2013).  In fact, Bergstein motion attempts exactly what a motion for reconsideration does not permit: to "relitigat[e] old issues, "secur[e] a rehearing on the merits, or otherwise tak[e] a second bite at the apple."  Analytical Surveys, 684 F.3d at 52.  Bergstein's motion should be denied on that basis alone.

### A. Tax Return Evidence

Bergstein argues first that the Government misrepresented that various shell companies through which Bergstein funneled money to himself did not file tax returns.  Bergstein argues that one of those shell companies—K Jam Media, Inc. ("KJM")—filed tax returns in 2011 and 2012 and reported income of several million dollars. (Mot. 2).  Bergstein is wrong.  In response to the seemingly fake KJM invoices that Bergstein produced to the Government (*see, e.g.*, Feb. 9, 2018 Ltr. (Dkt. 268), the Government obtained from the Internal Revenue Service and produced to the defense KJM's tax returns in those years.  The 2011 and 2012 tax returns for KJM are entirely blank and reflect no income whatsoever.  Although the returns state that "taxpayer doesn't have its financial statements ready" and "will file an amended return as soon as its financial [sic] are ready," the IRS has no record of receiving amended returns.  In any event, there is no indication on Bergstein's tax returns that he received and reported income from KJM and various other shell entities through which he paid himself P2 and TT proceeds.  The Government has already produced and marked as exhibits certifications reflecting that several shell companies through which Bergstein paid himself did not file returns in those years.  Similarly, although Bergstein makes various arguments about his emails with his tax preparer (Mot. 2), the salient point is neither Bergstein's emails nor his tax returns reflect that he reported any income from the proceeds of the scheme charged in the Indictment.

Evidence of Bergstein's failure to report that income is critical to the Government's case and to rebut the argument advanced by the defense that Bergstein was entitled to receive P2 and TT proceeds.  In his reconsideration motion, Bergstein again argues that Bergstein's "businesses provided legitimate services and advanced funds, and were entitled to compensation and reimbursement for the same.  Once that money was legitimately received as compensation or reimbursement, what happened thereafter is irrelevant." (Mot. 3, footnote 1).  Bergsten's argument underscores the importance and relevance of Bergstein's failure to report that money on his tax returns in addressing Bergstein's defense.  Under controlling Second Circuit precedent, Bergstein's tax returns are squarely admissible in these circumstances.  *See, e.g.*, United States v. Osarenkhoe, 439 F. App'x 66, 68 (2d Cir. 2011) (holding that "there was no question that the [defendant's] tax return was admissible under Rule 404(b) . . . to provide a basis from which the

jury could infer the defendant's fraudulent intent and the absence of mistake in her improper receipt of . . . payments"); *United States* v. *Valenti*, 60 F.3d 941, 946 (2d Cir. 1995) ("The tax returns were obviously probative to refute [the] defense that the contested funds were legitimate compensation for work [the defendant] performed."); *United States* v. *Deutsch*, 451 F.2d 98, 116 (2d Cir. 1975) (evidence of failure to report transaction was "independently probative of [defendant's] guilt because "it showed evasive conduct aimed at concealing the transaction and constitute circumstantial evidence of guilty consciousness"); *United States* v. *Mirilishvili*, 2016 WL 751690, at *7 (S.D.N.Y. Feb. 190, 2016) (holding tax returns admissible; "the fact that the defendant under-reported the cash income earned from [the scheme]" was "probative of the defendant's knowing participation in unlawful activity").

To the extent Bergstein argues that the tax evidence should be excluded under Rule 403, the evidence will be admitted through the relatively brief testimony of an IRS witness, who will admit the returns and certifications reflecting that the shell companies did not file returns. At bottom, Bergstein attempts to make the evidence appear to be more complex than it really is.

Finally, Bergstein's claim that the tax evidence requires expert testimony is frivolous. As an initial matter, the disclosure of any such expert at this stage would be highly untimely and prejudicial to the Government. On December 1, 2017, the Government requested notice of any expert witness. More than two months ago, the Government provided notice in our motion *in limine*, pursuant to Rule 404(b), of our intention to introduce the tax returns on the theory that Bergstein did not disclose his income from the scheme charged in the Indictment. Between December 16, 2017 and December 28, 2017, Bergstein confirmed that he did not intend to offer any expert testimony. In any event, an expert witness would shed no light whatsoever on Bergstein's state of mind, which is the relevant issue.

### B.  The DB Zwirn Film Scheme Evidence

The Government intends to call a single witness from DB Zwrin to elicit approximately 20 to 30 minutes of testimony about representations made by Bergstein about the use of DB Zwirn funds in connection with investments made with in or about 2007 and 2008. The Government has also offered to reach a stipulation on this witness that would simply introduce the relevant contracts and disbursement records. Notwithstanding Bergstein's arguments, the DB Zwirn evidence is not particularly complicated. Bergstein took out loans but then, instead of complying with the restrictions on how that money could be used, directed hundreds of thousands of dollars to casinos to repay old gambling debts.

Bergstein likewise confuses the relevant issue. What matters are Bergstein's misrepresentation about how he would use his victim's funds. The various types of evidence Bergstein claims he needs to introduce—including DB Zwirn's purported misrepresentation of the value of certain assets and Bergstein's purported film loans—are plainly irrelevant and inadmissible in any event. (Mot. 4). As the Government previously outlined, the media scheme evidence is necessary to prove that Bergstein used Weston funds in order to cover up Bergstein's prior scheme and to address Bergstein's argument that he purportedly acted in good faith, and the Court has already ruled it admissible on that basis.

\*   \*   \*

For the aforementioned reasons, Bergstein's motion for reconsideration should be denied.

                Respectfully submitted,

                GEOFFREY S. BERMAN
                United States Attorney

By:     /s/
                Edward Imperatore/Robert Allen/Elisha Kobre
                Assistant United States Attorneys
                (212) 637-2327/2216/2599