*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 21, 2018

**BY ECF**

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    **United States v. David Bergstein, 16 Cr. 746 (PKC)**

Dear Judge Castel:

      The Government hereby moves to preclude defendant David Bergstein from introducing extrinsic evidence, under Federal Rule of Evidence 613, of purportedly inconsistent statements by Government witness Keith Wellner. Specifically, Bergstein seeks to introduce extrinsic evidence of prior statements Wellner made to the SEC and the FBI regarding the fraudulent Swartz IP-Arius Libra note. As set forth below, Bergstein is precluded from offering extrinsic evidence of Wellner's prior statements for three independent reasons: (1) Wellner's prior statements were not inconsistent with his trial testimony; (2) Wellner's failure of recollection did not establish any inconsistency with a prior statement; and (3) Bergstein failed to provide notice, while Wellner was still on the stand, of his intent to introduce extrinsic evidence of the prior statements.

## Factual Background

### A. Prior Statements to the Securities and Exchange Commission

      Notes prepared by the Securities and Exchange Commission ("SEC") reflect that Keith Wellner spoke with an SEC employee by phone on or about November 13, 2012. The notes, which have been produced to the defense as 3514-03, are hand-written on a print-out of an email bearing the subject line "Wellner Call Qs." The notes, which are not written in full sentences, state the following, in relevant part:

Wellner Call:

    (1) $8M note Swartz loaned to Arius Libra
    (3) Purplebox being mentioned in contribution agreement as owning a % of Arius Libra
    (2) $800K – and that $500K paid back.
    (4) Bidz.com "investment"

> (5) TT Explanatory memorandum governing that investment in Tewksbury?
>
> (1) Executed sometime in 2012 (possibly 2nd/Q)
>    → D.B. was funding Pineboard hldgs (Arius sub) to keep business (medical) up and running
>    → trying to get PII loan paid off.  If note w/b documenting Arius debt
>
> . . . .
>
> d/n/k for sure that $ went to Arius Libra
>
> he believes money went to Pienboard or Sovereign [sic] healthcare

(3514-03).

### B. Defense Counsel's Cross Examination Regarding Statements to SEC

During the defense's cross-examination of Wellner on Tuesday, February 13, 2017, Wellner was asked, in relevant part, the following questions by counsel for Bergstein, and gave the following answers:

> Q. Is it true, sir, that you had a phone interview with the SEC in November 2012, and they specifically asked you questions about the Swartz IP-Arius Libra $8 million loan?
>
> A. I don't recall.

(Tr. 773).

> Q. Is it true, sir, that in November 2012, you told the SEC that the SIP Arius loan was made earlier this year, which was 2012, and you believe it was probably in the first quarter of 2012?
>
> A. I don't recall.
>
> Q. Is it true that you told them that it related to funds that went directly to Pineboard for -- to fund Arius Libra operations and that you believed the loan was made?
>
> A. I don't recall.
>
> Q. Directing your attention to the document in front of you,[1] and tell me if that refreshes your recollection on those topics?

---

[1] Although defense counsel did not identify for the record which document he was showing to Wellner, the Government assumes it was 3514-03.  Bergstein's counsel did not direct Wellner's attention to any particular portion of the document or ask if it refreshed his recollection as to any particular statement.

    A. It does not.

(Tr. 776).

### C. Prior Statements to Federal Bureau of Investigation

Wellner met with the Government on May 27, 2015. Federal Bureau of Investigation ("FBI") Special Agent Shannon Bieniek took notes of Wellner's statements during the meeting and later prepared, on FBI Form FD-302, a report summarizing those statements (the "302"). The 302 contains the following statements:

> WELLNER did not recall an in-person meeting regarding the fraudulent $8 million note from SWARTZ IP to ARIUS LIBRA. WELLNER recalled e-mail and phone conversations regarding the note. WELLNER believed BERGSTEIN drafted the note. April or May of 2012 was the first time WELLNER saw the note. WELLNER signed the note as president of ARIUS LIBRA. The note is fraudulent and does not accurately reflect reality. The note was created to mask the fact that the real lender to ARIUS LIBRA was the P2 Fund, not Swartz IP. WELLNER believes BERGSTEIN created the note but cannot say for sure. WELLNER remembered conversations with BERSTEIN and HALLAC about creating the note. It was Hallac who introduced the idea of creating the note because he was trying to mask the source of the funds to ARIUS LIBRA since some WFF investors overlapped with P2 investors.

(3514-06, at pp. 3-4).

### D. Defense Counsel's Cross Examination Regarding Statements to FBI

During the defense's cross-examination of Wellner on Tuesday, February 13, 2017, Wellner was asked, in relevant part, the following questions, and gave the following answers:

> Q. Do you remember meeting with the FBI on or about May 27th, 2015, and being asked specifically about the -- what you're calling the fraudulent $8 million note from Swartz IP to Arius Libra?
>
> A. I remember meeting with them around that time frame. I don't recall specifically that topic.
>
> Q. Well, do you recall that you told the FBI and the prosecutors and Ms. Bieniek that you recall there being e-mail and phone conversations regarding that note? Do you remember that?
>
> A. I don't remember specifically saying that, no.
>
> Q. Do you remember telling them that you believed Mr. Bergstein drafted the note?

A. I don't remember specifically telling them that in 2015.

Q. Do you remember telling them that you believed Mr. Bergstein created the note, but you couldn't say for sure?

A. I don't remember the specific conversation that I had in 2015 with the FBI.

Q. Is it true, sir, that in 2015, you told them that you couldn't say for sure if Mr. Bergstein created that note?

A. I just testified that I don't remember the specific conversation that I had in 2015.

Q. So is what you're saying, so I can understand your answer to my question, that you don't recall whether or not you told them in 2015 that you could not be sure if Mr. Bergstein created the note?

A. That's correct, I don't recall that specific conversation.

Q. Do you remember telling the FBI in 2015 that it was Mr. Hallac, your partner, who introduced the idea of creating the note to try to mask the source of funds to Arius Libra?

A. I don't recall specific -- I don't recall specifically the conversation that you're referring to.

Q. I'm just pointing something in front of you. You can orient yourself as to looking at it, but I'm going to point to a couple of particular pages.

. . .

MR. BIENERT: I'm going to do it by Bates. Okay. It is what's marked as 3514-6, and I am directing him to pages 3 and 4.

Q. And by the way, one other question about that. Is it true that when you met with the government prosecutors and Ms. Bieniek in May of 2015, you told them that you did not recall an in-person meeting regarding the purported fraudulent note?

A. I don't recall.

Q. Now, if you can, look at what's in front of you. Have you had a chance to look at it?

A. I have.

Q. Does that refresh your recollection as to whether you said any of these things to the FBI and prosecutors?

> A. It does not.

(Tr. 779-781).

### E. The Defense's Subsequent Notice of Intent to Introduce Prior Statements

On February 15, 2018, two days after Bergstein's counsel competed his cross examination of Wellner and Wellner was excused as a witness, the Government learned that Bergstein's counsel had subpoenaed an employee in the Miami office of the SEC.  The Government asked Bergstein's counsel why he had subpoenaed the SEC employee, and counsel responded that he intended to introduce extrinsic evidence of Wellner's purportedly prior inconsistent statements to the SEC by calling as a witness an SEC employee who participated in Wellner's phone interview.  On February 15, 2018, the Government asked Bergstein's counsel by email which specific prior statements of Wellner counsel sought to introduce through extrinsic evidence.  On February 18, 2018, Bergstein indicated that he intends to offer the following statements that Wellner purportedly made to the SEC during the November 13, 2012 phone call:

(1) The Swartz IP ("SIP")-Arius loan was made in 2012, and probably in the first quarter of 2012.

(2) The funds (from the SIP-Arius Loan) went directly to Pineboard . . . to fund Arius operations.

(3) Wellner believes the loan was made.

On February 18, 2018, Bergstein's counsel further indicated that he intended to offer the following statements that Wellner purportedly made to the FBI during a proffer on May 27, 2018:

(1) Wellner did not recall an in-person meeting regarding the note.  He recalled email and phone conversations regarding the note.

(2) Wellner believed Bergstein drafted the note, but cannot say for sure.

(3) It was Hallac who introduced the idea of creating the note because he was trying to mask the source of the funds to Arius since some WFF investors overlapped with P2 investors.

### Applicable Law

In *United States v. Ghailani*, 761 F. Supp. 2d 114, 117-18 (S.D.N.Y. 2011), Judge Kaplan outlined the procedural requirements underlying the admission of extrinsic evidence of prior inconsistent statements. First, the Court must determine "whether the proffered statement in fact is inconsistent with the testimony sought to be impeached." *Id*. Next, the party seeking to offer extrinsic evidence of a prior inconsistent statement "must have laid a proper foundation for doing so by affording (a) the witness an opportunity to explain or deny the prior inconsistent statement and (b) the opposite party an opportunity to question the witness about it." *Id.* at 118; *see also United States v. Surdow*, 121 F. App'x 898, 899-900 (2d Cir. 2005) ("[A]trial court's broad discretion in controlling 'the mode and order of interrogating witnesses and presenting evidence,' Fed.R.Evid. 611(a), permits it to exclude extrinsic impeachment evidence 'that was not revealed while the witness was on the stand,' or at least before the witness was permitted to leave the court."). Third, the extrinsic evidence must be competent and otherwise admissible. *Ghailani*, 761 F. Supp. 2d at 118. Fourth, the extrinsic impeachment evidence must relate to a material rather than a collateral matter. *Id.* Finally, the extrinsic evidence is subject to analysis under Federal Rule of Evidence of 403. *Id.*

### Discussion

Bergstein is precluded from offering extrinsic evidence of Wellner's prior statements to the SEC and the FBI for three independent reasons: (1) Wellner's prior statements were not inconsistent with his trial testimony; (2) Wellner's failure of recollection did not establish any inconsistency with a prior statement; and (3) Bergstein failed to provide notice, while Wellner was still on the stand, of his intent to introduce extrinsic evidence of the prior statements, which deprived the Government of the ability to inquire about the prior statements.

#### A. Wellner's Prior Statements Were Not Inconsistent with His Trial Testimony

Bergstein's efforts to use extrinsic evidence to impeach the trial testimony of Wellner should be precluded for the fundamental reason that his trial testimony was not in fact inconsistent with his prior statements, as follows.

*(1) The SIP-Arius loan was made in 2012, and probably in the first quarter of 2012.*

As an initial matter, the SEC handwritten notes appear to reflect that the SEC asked Wellner about the Swartz IP-Arius Libra loan <u>note</u>, not the loan. Wellner apparently stated that the <u>note</u> was executed the <u>second quarter</u> of 2012. (3514-03 ("Executed sometime in 2012 (possibly 2nd/Q)"). That statement is entirely consistent with Wellner's testimony during his direct and cross examination that he believed the loan note was created in May 2012, which was in the second quarter of 2012, not the first. (Tr. 803). On cross examination, Bergstein's counsel asked Wellner: "Is it true, sir, that in November 2012, you told the SEC that the SIP Arius loan was made earlier this year, which was 2012, and you believe it was probably in the <u>first quarter</u> of 2012?" (Tr. 776) (emphasis added). Bergstein's counsel's ambiguous and misleading question misstated what is reflected in the SEC's notes, which refer to the second quarter of 2012, not the first quarter. Accordingly, there is no inconsistency with Wellner's trial testimony

>   *(2) The funds (from the SIP-Arius Loan) went directly to Pineboard . . . to Fund Arius Operations*

Bergstein's counsel asked Wellner: "Is it true that you told them that it related to funds that went directly to Pineboard for -- to fund Arius Libra operations and that you believed the loan was made?" Bergstein's counsel's question was again ambiguous, misleading, and misstated what is reflected in the SEC's notes. There is no indication in the notes that Wellner made any such statement to the SEC. (3514-03). In any event, there was no inconsistency with the trial testimony of Wellner, who was never asked if the loan "related to funds that went directly to Pineboard."

>   *(3) Wellner believes the loan was made.*

As noted above, Wellner's counsel asked Wellner: "Is it true that you told them that it related to funds that went directly to Pineboard for -- to fund Arius Libra operations and that you believed the loan was made?" Bergstein's counsel's question was ambiguous, misleading, and misstated what is reflected in the SEC's notes. There is no indication in the SEC notes that Wellner told the SEC that he "believes the loan was made." (3514-03). Accordingly, there was no prior inconsistent statement.

>   *(4) Wellner did not recall an in-person meeting regarding the note. He recalled email and phone conversations regarding the note.*

Wellner testified at length on direct examination about email and phone conversations regarding the fraudulent SIP-Arius Libra note. (*See, e.g.*, Tr. 322-28, 333-34). That testimony was entirely consistent with his statements to the FBI in May 2015. (3514-06, at pp. 3-4). To the extent Bergstein seeks to introduce Wellner's apparent failure during his May 2015 proffer to recall "an in-person meeting regarding the note," "there is no evidence that could warrant the conclusion that any silence on this point in prior interviews was sufficiently unambiguous to make that prior silence inconsistent with his trial testimony." *Ghailani*, 761 F. Supp. 2d at 125 (citing *United States* v. *Strother*, 49 F.3d 869, 874 (2d Cir.1995)).

>   *(5) Wellner believed Bergstein drafted the note, but cannot say for sure.*

Wellner testified both on direct examination and on cross examination that he believed Bergstein drafted the fraudulent note. (*See, e.g.*, Tr. 351, 763). Special Agent Bieniek's 302 report reflect that Wellner stated during the May 27, 2015 proffer both that "WELLNER believed BERGSTEIN drafted the note" and that "WELLNER believes BERGSTEIN created the note but cannot say for sure" (3514-06, at pp. 3-4). Accordingly, Wellner's trial testimony that Bergstein drafted the note was entirely consistent with what he told the FBI during the May 27, 2015—that he "believed Bergstein drafted the note." *See, e.g.*, *Ghailani*, 761 F. sup. 2d at 117 (stating that relevant question is whether the testimony sought to be impeached is "in fact inconsistent" with the proffered statement). Accordingly, there was no prior inconsistent statement.

> *(6) It was Hallac who introduced the idea of creating the note because he was trying to mask the source of the funds to Arius since some WFF investors overlapped with P2 investors.*

Bergstein's counsel never asked Wellner whether it was Hallac who introduced the idea of creating the note because Hallac was trying to mask the source of funds to Arius since some WFF investors overlapped with P2 investors. Bergstein's counsel therefore failed to satisfy the first requirement for eliciting a prior inconsistent statement under Rule 613(b): to elicit testimony that is in fact inconsistent with the witness's prior statement. *See, e.g.*, *Ghailani*, 761 F. Supp. 2d at 117-18 ("First, the Court must determine whether the proffered statement is in fact inconsistent with the testimony sought to be impeached."). In any event, Wellner testified during his direct examination that creating the fraudulent note was motivated in part by a desire to mask the source of the funds to Arius because some WFF investors overlapped with P2 investors (see, e.g., Tr. 322-28), and that the decision to create the fake note was a "collaborative effort" involving Hallac (Tr. 327). Accordingly, there is no inconsistency with Wellner's prior statements to the FBI.

### B. A Failure of Recollection Does Not Establish Inconsistency with a Prior Statement

Bergstein's counsel's attempt to introduce Wellner's statements fails for the independent reason that Wellner's inability to recall his statements to the SEC or the FBI does not establish any inconsistency with his prior statements. At trial, Wellner testified multiple times that he did not recall the specifics of his discussions with the SEC by telephone, which took place more than five years ago. (Tr. 773). Similarly, Wellner testified that he did not "remember the specific conversation that I had in 2015" with the FBI about the fake note. (Tr. 779-81). But there was no instance in which Wellner denied making the statements in question to the SEC or FBI. A failure of recollection about a prior statement does not create an inconsistency with such a prior statement. *See, e.g.*, *United States v. DeSimone*, 488 F.3d 561, 572 (1st Cir. 2007) (not an abuse of discretion for district court to conclude that witness's failure to recall making prior statement was not inconsistent with that prior statement, particularly given the passage of five years since the date of the statement); *United States v. Ashburn*, 2015 WL 5098607, at * 27 (E.D.N.Y. Aug. 31, 2015) (noting that out-of-circuit case law holds that "in certain circumstances, a witness's failure to recall a prior statement regarding a subject at issue in the trial is so incredible that it may be deemed inconsistent and thus subject to impeachment by extrinsic evidence.") (emphasis removed from original).

Here, there is nothing "so incredible" about Wellner's failure to recall the specific details of his telephone proffer with the SEC, which took place more than five years ago and was memorialized only in handwritten blurbs written by an SEC staff member rather than in complete sentences, or his proffer with the FBI, which took place two-and-a-half years ago. In fact, Bergstein's counsel prefaced his questions to Wellner with confusing terms like "when you were talking to the SEC about the Swartz IP-Arius Libra loan topic" and repeatedly misstated what the notes actually said. (Tr. 776, 778). With regard to the FBI 302 report, Bergstein's counsel asked whether it refreshed Wellner's "recollection as to whether you said any of these things to the FBI and prosecutors" without clarifying which "things" he was referring to. (Tr. 781).

Counsel's strategic decision to ask no further questions in an effort to establish an inconsistency, or to refresh Wellner's recollection as to particular statements reflected in the SEC notes and FBI 302 report, was at his own peril. At bottom, the trial record simply does not establish any inconsistency between Wellner's prior statements to the SEC or FBI and his trial testimony. As such, Bergstein's efforts to introduce extrinsic evidence of such purported inconsistencies should be precluded on this basis alone.[2]

### C. Bergstein's Failure to Provide Notice, While Wellner Was Still on the Stand, of His Intent to Use Extrinsic Evidence Deprived the Government of an Opportunity to Inquire about the Prior Statements

The defendant is required to notify the Government of its intent to introduce extrinsic evidence of a prior inconsistent statement so that the Government has a full and meaningful opportunity to inquire about the prior statements. Fed. R. Evid. 613(b); *see also Ghailani*, 716 F. Supp. 2d at 124 n.36 ("In any case, the defendant dropped the point on cross-examination and failed to notify the Court or the government that he would seek to impeach Juma on this point by extrinsic evidence. This deprived the government of an opportunity to question Juma on the point before the jury, as was its right."); *Surdow*, 121 F. App'x at 900 ("[A] court may reasonably expect that, to ensure the orderly conduct of a trial, an impeaching party that does not itself intend to confront a witness with the particulars of a purportedly inconsistent statement will, at the very least, 'inform[ ] the court and opposing counsel, *at the time the witness testifies,* of the intention to introduce' impeaching extrinsic evidence so that appropriate steps may be taken to 'keep the witness available to be called to explain the statement.'") (emphasis in original). Because Wellner is no longer on the witness stand, the Government will have no ability to confront the extrinsic evidence of Wellner's prior statements or ask Wellner to explain any purported inconsistency. Such a result is fundamentally unfair and provides an independent basis for precluding the proffered extrinsic evidence.

---

[2] Even if there were a prior inconsistent statement (and there is not, for the reasons discussed above), the extrinsic evidence of any prior statement would of limited probative value given the weakness of any inconsistency with Wellner's trial testimony, and is thus independently excludable under Rule 403. *See, e.g.*, *Ghailani*, 761 F. Supp. 2d at 124 ("The probative value of any inconsistency, given its at best weak nature, would have been substantially outweighed by the risk of misleading the jury and confusing the issues.").

## Conclusion

For the reasons set forth above, the Government respectfully requests that the Court preclude Bergstein from offering extrinsic evidence of Wellner's purportedly inconsistent prior statements to the SEC and FBI.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: _____/s/_____
Edward Imperatore/Robert Allen/Elisha Kobre
Assistant United States Attorneys
(212) 637-2327/2216/2599