


**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 24, 2018

**BY ECF**

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

     Re:    **United States v. David Bergstein, 16 Cr. 746 (PKC)**

Dear Judge Castel:

    The Government hereby moves to preclude defendant David Bergstein from introducing extrinsic evidence, under Federal Rule of Evidence 613, of a purportedly inconsistent statement by Government witness James King. Specifically, the defense seeks to admit a statement made by James King to the FBI that Jerry Swartz's sons-in-law were comfortable with his entering into a consulting agreement with Swartz IP. As set forth below, King's prior statement is inadmissible on four separate grounds: (1) there was in fact no inconsistency with King's trial testimony, (2) King was never confronted with or given the opportunity to explain his prior statement, (3) the statement went to a collateral issue in light of King acknowledgment that Swartz himself was considering a consulting arrangement, and (4) the risk of confusion and waste of time outweighs the limited probative value of the statement pursuant to Rule 403.

## Factual Background

### A. Prior Statements to the FBI

    An FBI 302 report prepared by the FBI reflect that James King met with the Government on or about September 21, 2016. The report states, in relevant part:

    KING advised SWARTZ not to get involved with Swart IP. KING stated that SWARTZ's son-in-laws [sic] really did not want SWARTZ to have any further relationship with BERGTEIN, but were ultimately comfortable with a consulting relationship through SIP.

(3507-02, at p. 6).

### B.  Defense Counsel's Cross Examination

During the defense's cross-examination of King on February 15, 2018, King was asked, in relevant part, the following questions by counsel for Bergstein, and gave the following answers:

Q.  Mr. King, is it true that in November 2011 Dr. Swartz's sons-in-law were ultimately comfortable with a consulting arrangement through Swartz IP?

A.  No.  That is not true.  They were not consulted at that time at all.

Q.  Did you have an opportunity to speak with the government at some point in the fall of 2016?

A.  I don't remember when our first meeting was.  I don't know.  I can't remember that first meeting when it was.

Q.  During that meeting did you tell the government – FBI agents and the prosecutors -- that Swartz's sons-in-law really did not want Swartz to have any further relationship with Bergstein but were ultimately comfortable --

THE COURT:  You cannot read from a document not at issue.

MR. FISH:  I am asking if he said this.  I am asking about a prior inconsistent statement.

THE COURT:  You cannot read from a document not in evidence.

MR. FISH:  I haven't indicated that I am reading from a document.

THE COURT:  I thought I told you at side bar you could show it to him to see whether it refreshes his recollection.

MR. FISH:  I can take that approach.  He didn't say he didn't recall.  He said it didn't happen.

A.  It didn't happen in November 2011.  I recall very distinctly.

   . . . .

THE COURT:  Let's pause.  Give me the document.  Have you ever seen this document before?

THE WITNESS:  No.

THE COURT:  Hand it back to me.  Hand it back to the questioner.  Ask your question.

BY MR. FISH:

Q.  Did you tell the government that Dr. Swartz's sons-in-law really did not want Swartz to have any further relationship with Mr. Bergstein or ultimately comfortable with a consulting arrangement -- consulting relationship through SIP?

A.  No.  It was very clear that his son-in-laws as well as his daughters did not want him to have any relationship with Mr. Bergstein whatsoever, including a consulting relationship.

Q.  Isn't it true that in November 2011, Dr. Swartz did not  fully close the idea on an agreement with Mr. Bergstein?

A.  On a consulting agreement?

Q.  Consulting agreement.

A.  Yes.  Contrary to the advice of -- the advice he was receiving from me personally and his family, he continued to consider a possibility of having a consulting agreement with Mr. Bergstein or his companies.

(Tr. 1299-1301).

    After King's testimony concluded, Bergstein's counsel indicated that he intended to offer the following statements that King made during his September 2016 meeting with the FBI:  "KING stated that SWARTZ's son-in-laws [sic] really did not want SWARTZ to have any further relationship with BERGTEIN, but were ultimately comfortable with a consulting relationship through SIP."   (3507-02, at p. 6).

### **Applicable Law**

    In *United States v. Ghailani*, 761 F. Supp. 2d 114, 117-18 (S.D.N.Y. 2011), Judge Kaplan outlined the procedural requirements underlying the admission of extrinsic evidence of prior inconsistent statements.  First, the Court must determine "whether the proffered statement in fact is inconsistent with the testimony sought to be impeached."  *Id*.  Next, the party seeking to offer extrinsic evidence of a prior inconsistent statement "must have laid a proper foundation for doing so by affording (a) the witness an opportunity to explain or deny the prior inconsistent statement and (b) the opposite party an opportunity to question the witness about it."  *Id.* at 118; *see also United States v. Surdow*, 121 F. App'x 898, 899-900 (2d Cir. 2005) ("[A]trial court's broad discretion in controlling 'the mode and order of interrogating witnesses and presenting evidence,' Fed.R.Evid. 611(a), permits it to exclude extrinsic impeachment evidence 'that was not revealed while the witness was on the stand,' or at least before the witness was permitted to leave the court.").  Third, the extrinsic evidence must be competent and otherwise admissible. *Ghailani*, 761 F. Supp. 2d at 118.  Fourth, the extrinsic impeachment evidence must relate to a material rather than a collateral matter.  *Id.*  Finally, the extrinsic evidence is subject to analysis under Federal Rule of Evidence of 403.  *Id.*

### Discussion

Bergstein is precluded from offering extrinsic evidence of King's prior statement for four independent reasons: (1) there was in fact no inconsistency with King's trial testimony, (2) King was never confronted with or given the opportunity to explain his prior statement, (3) the statement went to a collateral issue, and (4) the significant risk of confusion and waste of time outweighs the limited probative value of the statement pursuant to Rule 403.

### A.  King's Prior Statements Were Not Inconsistent with His Trial Testimony

Bergstein's efforts to use extrinsic evidence to impeach the trial testimony of King should be precluded for the fundamental reason that his trial testimony was not in fact inconsistent with his prior statement.  Bergstein's counsel confusingly asked King: "Mr. King, is it true that in November 2011 Dr. Swartz's sons-in-law were ultimately comfortable with a consulting arrangement through Swartz IP? (Tr. 1299 (emphasis added)).  King responded:  They were not consulted at that time at all.  (Tr. 1299 emphasis added)).  Following a colloquy with the Court, King stated: "It didn't happen in November 2011.  I recall very distinctly."  King's testimony is entirely consistent with the FBI 302 report, which does not reflect that King ever claimed that in November 2011 Dr. Swartz's son-in-laws were ultimately comfortable with a consulting agreement through Swartz IP.  (3507-02, at p. 6).  Although there was no evidence that the son-in-laws were consulted on such an agreement in November 2011 and King himself volunteered that it "didn't happen in November 2011," Bergstein's counsel strategically decided not to ask any follow-up questions in an attempt to establish an inconsistency or confront King with his prior statement, which made no reference to November 2011.  Accordingly, there is no prior inconsistent statement.

### B.  King Was Not Given an Adequate Opportunity to Explain His Prior Statements

Bergstein's attempt to introduce King's prior statement fails also because King was not given an opportunity to explain his prior statement.  Rule 613 requires that, before extrinsic evidence of a prior inconsistent statement can be introduced, the witness be given an opportunity to explain or deny his prior statement.  The requirements of Rule 613 have not been met because King was never actually confronted in any meaningful way with any statements he made in his meeting with the Government.

As described above, Bergstein's counsel misled King by asking him the son-in-laws in November 2011 were comfortable with a consulting agreement.  But the 302 report memorializes no such statement.  Although the Court correctly suggested that Bergstein's counsel confront King with the prior statement and inquire about it, Bergstein's counsel strategically decided not to do so.   Had King been asked about or directed to the specific statement, King might have had an opportunity to put his prior statement in context and explain it, to the extent he recalled making it.  King himself responded: "They were not consulted at that time at all. . . It didn't happen in November 2011.  I recall very distinctly."  (Tr. 1299-1301 (emphasis added)).  Despite the Court's suggestion that he do so, counsel's strategic decision to ask no further questions to clarify what King meant or the relevant time frame, or to ask King about  the statements reflected in the FBI 302 report, was at his own peril.  Because King was not shown the context of his prior

statements, and given the course of the questioning, King did not have a meaningful opportunity to explain his prior statements.

In *Ghailani*, for example, a witness testified that a particular store was closed for a long time before the African embassy bombing at issue in the trial. *Ghailani*, 761 F. Supp. 2d at 127. The witness was asked whether he had told the FBI that the store was in fact closed just two days before the bombing, and the witness denied doing so. *Id.* After the witness was off the stand, the defendant sought to introduce extrinsic evidence of the witness's prior statement to the FBI that the store was closed two days before the bombing. *Id.* Judge Kaplan precluded such extrinsic evidence, finding in part that the witness had not been provided with "a meaningful opportunity to explain the alleged prior inconsistent statement," even though the defendant had been asked about the very statement he previously made. *Id.* at 128 n.55. So too here. King never had a meaningful opportunity to explain his prior statements, and Bergstein therefore should be precluded from offering extrinsic evidence of such statements.

### C.   The Prior Statement Goes to a Collateral Rather a Material Issue

Under Second Circuit law, the extrinsic impeachment evidence must relate to a material rather than a collateral matter. *Ghailani*, 761 F. Supp. 2d at 118. Here, any testimony about (1) the views of Jerry Swartz's sons-in-law and (2) whether Swartz would enter into a consulting agreement was entirely collateral. Rather, the relevant issue was Jerry Swartz's own intentions and whether he had an ownership and equity interest in Swartz IP, rather than a consulting relationship. The prior statement that Bergstein's counsel seeks to introduce does not relate in any way to the relevant issues. This is particularly true given that King acknowledged that "[c]ontrary to the advice of -- the advice he was receiving from me personally and his family, he continued to consider a possibility of having a consulting agreement with Mr. Bergstein or his companies." (Tr. 1301). Accordingly, King's testimony already established that Swartz himself was considering a consulting arrangement, and in fact he testified on direct examination that Swartz entered into such a consulting arrangement in the spring of 2012.

### D.   The Evidence Should Be Precluded Under Rule 403

Even if there were a prior inconsistent statement (and there is not, for the reasons discussed above), the extrinsic evidence of any prior statement would be of very limited probative value given (1) the lack of any real inconsistency with King's trial testimony, (2) the fact that counsel misled King about the relevant time frame and gave him no opportunity to consider his prior statements despite the Court's appropriate suggestion that he do so, (3) the fact that the testimony goes to a collateral rather a material issue, (4) the very substantial risk of misleading the jury and confusing the issues, and (5) waste of time. *See, e.g.*, *Ghailani*, 761 F. Supp. 2d at 124 ("The probative value of any inconsistency, given its at best weak nature, would have been substantially outweighed by the risk of misleading the jury and confusing the issues.").

## Conclusion

For the reasons set forth above, the Government respectfully requests that the Court preclude Bergstein from offering extrinsic evidence of King's purportedly inconsistent prior statement.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: _____/s/_____
Edward Imperatore/Robert Allen/Elisha Kobre
Assistant United States Attorneys
(212) 637-2327/2216/2599