

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 1, 2018

**BY ECF**

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

     Re:    **United States v. David Bergstein, 16 Cr. 746 (PKC)**

Dear Judge Castel:

    The Government respectfully writes in opposition to defendant David Bergstein's motion for a judgment of acquittal pursuant to Rule 29. For the reasons set forth below, Bergstein's arguments are without merit and his motion should be denied.

**Applicable Law**

    Federal Rule of Criminal Procedure 29 provides that a court must "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "To prevail on an insufficiency of the evidence claim under Rule 29, a defendant bears the 'heavy burden' of showing that 'no rational trier of fact could have found all of the elements of the crime beyond a reasonable doubt.'" *United States* v. *Mensah*, 515 F. App'x 59, 61 (2d Cir. 2013) (quoting *United States* v. *Caracappa*, 614 F.3d 30, 43 (2d Cir. 2010)).

    In conducting this analysis, "[p]ieces of evidence must be viewed not in isolation but in conjunction." *United States* v. *Matthews*, 20 F.3d 538, 548 (2d Cir. 1994). "Courts do not assess witness credibility, resolve inconsistent testimony against the verdict, or otherwise weigh the significance of the evidence." *United States* v. *Chichakli*, 2014 U.S. Dist. LEXIS 154106, at *24 (S.D.N.Y. Oct. 16, 2014) (citing *United States* v. *Autuori*, 212 F.3d 105, 114 (2d Cir. 2000)). "The weight of the evidence is a matter for argument to the jury." *United States* v. *Matthews*, 20 F.3d at 548.

    Moreover, "[t]he fact that a trier of fact has declined to draw one of two or more competing inferences does not mean that the inferences not drawn were not available or were not reasonable." *United States* v. *Rosa*, 17 F.3d 1531, 1542 (2d Cir. 1994). "The ultimate question is not whether [the court] believe[s] the evidence adduced at trial established [the defendant's guilt], but whether any rational trier of fact could so find." *United States* v. *Eppolito*, 543 F.3d 25, 45-46 (2d Cir. 2008) (citation and emphases omitted).

## Discussion

Bergstein cannot meet his "'heavy burden' of showing that 'no rational trier of fact could have found all of the elements of the crime beyond a reasonable doubt.'" *United States* v. *Mensah*, 515 F. App'x at 61 (quoting *United States* v. *Caracappa*, 614 F.3d at 43). Bergstein advanced several bases for his Rule 29 motion orally at sidebar upon the conclusion of the Government's case (Tr. 2227-29) and supplemented his motion by letter dated February 26, 2018 ("Def. Sub."). For the reasons set forth below, Bergstein's motion fails.

1. Bergstein's claim that the substantive counts (Counts Two through Five) should be dismissed because "the government has never shown that Mr. Bergstein has a duty, a fiduciary duty to address conflicts of interest" and "they have not shown adequate evidence to show that he knowingly aided and abetted their failure to meet their duties." (Tr. 2227).

These points are meritless. As to the substantive securities counts (Counts Four and Five), the evidence showed that Bergstein made affirmative false representations in connection with the notes at issue, including among other things how he was going to use the proceeds of the P2 and TT loans, Jerry Swartz's involvement with Swartz IP, and Swartz IP's capitalization as reflected in the fake balance sheet Bergstein sent to Hallac and Wellner. As to these affirmative false representations, the issue of duty is irrelevant. *See, e.g.*, Tr. 173 (testimony of Wellner that Bergstein provided "very specific stated purposes that the money was supposed to be used for"); Tr. 1477 (testimony of Hallac that Bergstein represented that Jerry Swartz "owned 75 percent of the company [Swartz IP] and he said that he put in about $16 million to $18 million in it and gave me a balance sheet . . ."); Tr. 221, 224 (similar testimony of Wellner). Moreover, the evidence shows that Bergstein aided and abetted securities fraud committed by Hallac and Wellner in connection with both the P2 and TT transactions by knowingly assisting them to conceal the misuse of investor funds and multiple conflicts of interest as described below.

As to the substantive investment adviser fraud counts (Counts Two and Three), the Government has not claimed that Bergstein himself was a fiduciary to Weston's funds but rather that he aided and abetted Albert Hallac, who was a fiduciary to the funds, to breach those duties. And there was ample evidence at trial that Bergstein knowingly aided and abetted the fraud on Weston's funds. Both Hallac and Wellner repeatedly advised Bergstein about the illegality of the P2 loan (Tr. 152, 167-68, 176, 201, 1430-32, 1441). By way of example, Hallac testified that he told Bergstein about the "illegality of the P2 loan . . . [p]robably a dozen, 15 times," (Tr. 1441), while Wellner testified to telling Bergstein that the P2 loan "would not be disclosed to investors" and "would create a problem" if it was disclosed. (Tr. 168). Likewise as to the TT loan, Hallac specifically told Bergstein that the TT fund "was only supposed to invest in Tewksbury," (Tr. 1501), and Wellner testified that he told Bergstein that the Swartz IP transaction was "outside the investment mandate" of the TT fund. (Tr. 265). These are just a few examples of the evidence showing Bergstein's knowledge of the illegality of the transactions which he aided and abetted. *See*, *e.g.*, (Tr. 201 (Bergstein was the "architect" of the unwind transaction)); GX 160 (e-mail from Bergstein sending Wellner and Hallac the Swartz IP Note).

Page 3

Bergstein also assisted Wellner and Hallac in lying directly to investors. *See* Tr. 204-207 (describing Bergstein's involvement in reviewing and presenting to investors a PowerPoint presentation falsely stating that Bergstein's company had "arranged for a loan" to Arius Libra); Tr. 1790-91 (Bergstein falsely told investor Bill Porter that Swartz IP had extended the loan to Arius Libra).

2. Bergstein's claim that the Government's evidence did not show that Hallac was an investment adviser to Weston's funds. (Tr. 2227-2228; Def. Sub., Point I).

This is simply incorrect. Hallac testified that he was an investment adviser to all of Weston's funds. (Tr. 1396). Hallac also testified that he acted as an investment adviser to individual investors to the extent of providing advice when asked. (*Id.*). To the extent the defense is arguing that the indictment does not adequately allege a fraud on Weston's funds, this is merely another attempt to rehash the Court ruling in connection with the defendant's motion to dismiss. (Transcript of Final Pretrial Conference ("PTC Tr.") at 7-8) ("While Count Two references and is called investment adviser fraud on WFF and P2 fund and refers to fraud on the investors in the fund, read in context -- and of course Count Two incorporates the allegations in Count One -- *a fair-minded reading would inform the reader of the indictment that it charges a fraud on the funds*.") (emphasis added).

The Court has moreover already rejected Bergstein's claim that Section 80b-6(4) failed to provide him with sufficient notice. (*See* PTC Tr. at 8) ("Moreover, section 80b-6(4) is not limited to the clients or prospective clients of the investment adviser and is directed to fraudulent, deceptive, and manipulative acts or practices. So the application to dismiss Counts Two and Three is denied.")

3. Bergstein's claim that the Government has not established venue. (Tr. 2228).

This is a frivolous argument. Both Hallac and Wellner testified that Weston had an office on Third Avenue in Manhattan, (Tr. 97, 1467), where meetings with investors took place and from which they communicated repeatedly by phone and e-mail with Bergstein, who was based in California. (Tr. 330 (Bergstein's offices were in California)).

4. Bergstein's claim that the fraud was not in connection with the purchase or sale of a security. (Tr. 2229; Def. Sub., Point II).

This argument fails. As explained at length in the Government's letter dated February 28, 2018 (dkt # 302), both the P2 Note and the TT Note are securities because they are both "notes" and "investment contracts" under the Securities Exchange Act. 15 U.S. Code § 78c(a)(10). Moreover, the evidence at trial showed that the TT's funds were liquidated from the Tewksbury hedge fund for the specific purpose of using those monies in the Swartz IP transaction, induced by Bergstein. (Tr. 246) (testimony of Wellner that TT got the money for the Swartz IP transaction by "redeem[ing] securities from both Tewksbury directly and from the French bank in order to free up cash to provide to Swartz IP.").

3

    5.   Bergstein's argument that the substantive counts of the Indictment relating to the P2 Loan are barred by the applicable statute of limitations.  (Tr. 2228-29).

Bergstein's argument fails as a matter of law.  The Indictment in this case was returned on November 7, 2016.  The statute of limitations for wire fraud prosecutions is five years.  18 U.S.C. § 3282.  The statute of limitations for securities fraud and investment advisor fraud prosecutions is six years.  18 U.S.C. § 3301.  Under Second Circuit law, conspiracy and wire fraud are continuing offenses.  *See United States* v. *Tannenbaum*, 934 F.2d 8, 12 (2d Cir. 1991) (holding that crime of conspiracy is a continuing offense); *United States* v. *Kim*, 246 F.3d 186, 191-92 (2d Cir. 2001) (holding that wire fraud is a continuing offense).

In this case, Bergstein's conduct relating to the P2 Loan and the TT Loan were charged as part of a single scheme.  The trial evidence proved that wire disbursements from the TT Loan continued through at least August 24, 2012 (*see, e.g.*, GX-58), which is less than four years from the unsealing of the Indictment.  Even if the P2 loan were viewed as a separate scheme (and it is not), the most recent disbursement of proceeds from the P2 Fund pursuant to the P2 Loan took place through May 17, 2012 (see, e.g., GX-261-A), which was well within a five-year statute of limitations.  Accordingly, Bergstein's argument that the substantive counts relating to the P2 Loan are time-barred is meritless.

    6.   Bergstein's claim that the Government's evidence is insufficient to establish a conspiracy since he lied to Hallac and Wellner.  (Tr. 2228).

This argument fails because co-conspirators do not need to be perfectly aligned in every sense, and rarely are.  Although Bergstein may have had his own reasons for entering into the conspiracy, and in fact lied to Hallac and Wellner, the group nonetheless shared the common goal of entering into and then hiding the P2 Loan and the TT transaction.  That is a sufficient basis to find guilt.[1]

---

[1] Bergstein also argues that there is insufficient evidence to support a conviction on the wire fraud count (Count Seven) because the evidence showed that he defrauded the funds and not individual investors. This argument is baseless. First, the evidence at trial showed that Bergstein lied directly to Weston investors, both at the December 14, 2011 investor meeting and at a meeting with investor representative Bill Porter in May 2012. Moreover, Count Seven repeats and realleges all of the previous substantive allegations in in Indictment (Indictment ¶ 50), and as the Court recognized in its decision on the motion to dismiss, "a fair-minded reading would inform the reader of the indictment that it charges a fraud on the funds."  (PTC Tr. at 7-8).  In addition, a plain reading of the wire fraud count is that it charges a *scheme* to defraud investors through lies to the managers of those investors' funds.  A *scheme* to defraud investors does not require that lies be made to the investors themselves.  Rather, Bergstein may be found to have defrauded the investors by defrauding those with a fiduciary duty to protect those investor funds.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: _____/s/_____
    Edward Imperatore/Robert Allen/Elisha Kobre
    Assistant United States Attorneys
    (212) 637-2327/2216/2599