UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

                                                                              16-cr-746 (PKC)

        -against-                                                   OPINION
                                                                      AND ORDER

DAVID BERGSTEIN,

                              Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        This Opinion and Order sets forth the Court's findings of fact and conclusions of law on forfeiture and restitution.

FORFEITURE

1. Forfeiture of $22,584,897.00 will be ordered. Pursuant to 18 U.S.C. § 981(a)(1)(C), forfeitable property is "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to" the offense, "or a conspiracy to commit such offense." In cases involving loan fraud, "the court shall allow the claimant a deduction from the forfeiture to the extent that the loan was repaid, or the debt was satisfied, without any financial loss to the victim." Id. § 981(a)(2)(C). As to the P2 Loan, this figure represents the $9,410,572.00 in disbursed loan proceeds reduced by a $3,525,675.00 payment by Swartz IP. As to the TT Loan, this figure represents the $17,700,000.00 in disbursed loan proceeds reduced by a $1 million fulfillment of a TT Portfolio redemption request. The Court agrees with the parties that section 981(a)(2)(C) requires such deductions.

2. No additional deductions from forfeiture pursuant to section 981(a)(2)(C) are appropriate. Bergstein summarizes these proposed deductions his letter of August 24, 2018. (Dkt.

452).  Exhibit A of the August 24 letter ("Exhibit A") relates to the P2 Loan and lists such proposed deductions as items 1 through 5, 7, and 9.[1]  (Dkt. 452 Ex. A).  Exhibit B of the August 24 letter ("Exhibit B") relates to the TT Loan and lists such proposed deductions as items 1, 2, and 4.  (Dkt. 452 Ex. B).  The Court briefly addresses each.

    a. <u>P2 Loan</u>:  Items 2, 7, 8, and 9 of Exhibit A reflect certain payments subject to WFF and the P2 Fund's Pooling and Cooperation Agreement, the scope of which extends beyond the P2 Loan.  (Exs. A017 & A018; Dkt. 377 Ex. 1).  To the extent they or other payments subject to the Pooling and Cooperation Agreement are connected to the P2 Loan, such payments are not repayments on the P2 Loan without loss to the victim.  WFF and the P2 Fund were both victims of the fraud proven at trial: WFF was induced to use its assets to secure the P2 Loan to Arius Libra, which the P2 Fund was induced to extend for WFF's benefit.  When distributions from WFF assets flow to the P2 Fund pursuant to the Pooling and Cooperation Agreement, it necessarily occurs at a loss to WFF because of the structure of the scheme.[2]  As to Item 3 of Exhibit A, there is no indication that the "[c]ash held in WFF" claimed in was in fact ever transferred to the P2 Fund, even if such funds were properly considered repayments.  (Dkt. 402 Ex. 19).  Item 4 of Exhibit A reflects a payment by Jeffrey Hallac to WFF, but the supporting evidence does not suggest that it is in connection with the P2 Loan.  (<u>Id.</u> Ex. 20).  Item 5 of Exhibit A reflects distribution pursuant to a settlement between WFF

---

[1] Item 1 of Exhibit A and item 1 of Exhibit B fall within this category of claimed deductions.  The Court omits them from further discussion because it already accepted them as proper in point 1 of its Order above.

[2] One such distribution to the P2 Fund of $112,000—encompassed in item 2 of Exhibit A—is not subject to the Pooling and Cooperation Agreement because it predates the effective date of such agreement.  (A017; Dkt. 377 Ex. 1).  For the same reason, it occurs at a corresponding loss to WFF.

      and Aramid regarding a lawsuit brought by WFF, which is not a repayment at no financial loss because of litigation costs.  (Id. Ex. 21 at 7).

   b.  TT Loan:  Items 2 and 4 of Exhibit B are not proper deductions because settlement payments of civil suits brought by victims are not loan repayments at no financial loss to the victim.  (Exs. A016, A019; Dkt. 402 Ex. 5).

3. The Supreme Court's holding in Honeycutt v. United States, 137 S. Ct. 1626 (2017), does not affect the amount forfeiture in this case or entitle Bergstein to the deductions numbered as item 6 of Exhibit A and item 3 of Exhibit B.  Honeycutt analyzed 21 U.S.C. § 853—a forfeiture statute not at issue here, but instead applicable to certain drug crimes. 137 S.Ct. at 1630; 21 U.S.C. § 853(a).  Based on the language and statutory context of section 853, Honeycutt held that (i) section 853 limited a defendant's forfeiture "to property the defendant himself actually acquired as the result of the crime" and (ii) joint and several liability was not available under section 853 to order forfeiture against a defendant for property acquired by a co-conspirator that the defendant never personally possessed.  137 S.Ct. at 1631–32, 1635.  In the section 981 context, applicable Second Circuit precedent predating Honeycutt makes joint and several liability available and further specifies that a defendant can acquire forfeitable property without personally possessing the property so long as the defendant exercised control over the property.  See United States v. Contorinis, 692 F.3d 136, 147 (2d Cir. 2012).  Considering the separate statutes at issue and the limits of Honeycutt's holdings and rationale, this Court cannot say that Honeycutt so undermines Contorinis that it is nearly inevitable that the Second Circuit will overrule Contorinis.  See United States v. Emmenegger, 329 F. Supp. 2d 416, 429 (S.D.N.Y. 2004) (Lynch, J.); see also Rajaratnam v. United States, No. 17-1405-PR,

2018 WL 2460337, at *3 (2d Cir. June 1, 2018) (summary order) (applying <u>Contorinis</u> post-<u>Honeycutt</u>). Bergstein had direct control over the forfeitable property. Bergstein submitted borrowing certificates directing disbursements under the P2 Loan under the pretenses that they would be used for business purposes. Bergstein also exercised exclusive control over Swartz IP and thus over the TT Loan proceeds. It is of no moment that Bergstein directed certain disbursements to others for their benefit, or that Bergstein himself did not personally possess all the property at issue, when Bergstein exercised authority and control over the disbursements.

4. The Excessive Fines Clause does not bar the forfeiture outlined herein. "[A] punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." <u>United States v. Castello</u>, 611 F.3d 116, 120 (2d Cir. 2010) (quoting <u>United States v. Bajakajian</u>, 524 U.S. 321, 334 (1998) and describing the factors guiding such analysis). The Court has considered all of the <u>Bajakajian</u> factors and concludes that forfeiture is not grossly disproportional to the gravity of Bergstein's offense, particularly considering that forfeiture tracks the disbursements pursuant to the fraudulent loans at issue in this case. <u>See id.</u> (applying <u>Bajakajian</u>). Bergstein's arguments as to the amount of proceeds received by Bergstein personally and the size of restitution do not bear on the primary inquiry of whether forfeiture is proportional to his offense. <u>See Castello</u>, 611 F.3d at 120.

RESTITUTION

5. Restitution of $5,884,897.00 plus certain expenses as outlined below should be made to WFF.[3]  Restitution of $9,281,900.27 plus certain expenses as outlined below should be made to the TT Portfolio.  Pursuant to the Mandatory Victims Restitution Act ("MVRA"), "the court shall order, in addition to . . . any other penalty authorized by law, that the defendant make restitution to the victim of the offense."  18 U.S.C. § 3663A(a)(1), (c)(1).  "In the case of offenses involving monetary loss, that amount equals 'the greater of . . . the value of the property on the date of the damage, loss, or destruction; or . . . the value of the property on the date of sentencing, less . . . the value (as of the date the property is returned) of any part of the property that is returned.'"  United States v. Thompson, 792 F.3d 273, 277 (2d Cir. 2015) (omissions in original) (quoting 18 U.S.C. § 3663A(b)(1)(B)).  The MVRA's goal is to fully compensate victims, but does not permit a recovery exceeding actual loss.  United States v. Smathers, 879 F.3d 453, 459 (2d Cir. 2018).  The amounts of restitution above reflect the calculation of actual loss by crediting $3,525,675.00 for partial repayment against the $9,410,572.00 in disbursed loan proceeds under P2 Loan and to credit $8,412,000.00 for settlements and redemptions paid against the $17,693,900.27 outstanding balance on the TT Loan.

6. No additional reductions to restitution are appropriate.  Bergstein proposes that the same items listed on Exhibits A and B reduce restitution because they are: "(1) repayments of loan amounts; and (2) other amounts that are not properly attributed to Mr. Bergstein for the purposes of restitution because they are either amounts that Hallac and Wellner

---

[3] WFF, as the assignee of the P2 Fund's claim for restitution, seeks that the Court award in its favor any restitution to the P2 Fund.  (Dkt. 409 Ex. D).

disbursed for their own benefit, or payments that Hallac and Wellner directed Mr. Bergstein to make." (Dkt. 452 at 6).  The Court briefly addresses these arguments.[4]

    a. P2 Loan:  The Court has already concluded in the context of forfeiture that items 2 through 5 and 7 through 9 of Exhibit A are not appropriately considered repayments of the P2 Loan.  WFF was itself induced to secure the P2 Loan and suffers a corresponding loss to the extent it "repays" the P2 Fund for the fraud perpetrated on the P2 Fund.  That determination applies equally in the context of restitution.  As to item 6 of Exhibit A, "[i]t has long been the law of this circuit that the restitution obligation may be ordered to be joint and several," subject to the limit of impermissible double recovery.  United States v. Nucci, 364 F.3d 419, 422–24 (2d Cir. 2004).  There is no suggestion that Bergstein did not understand the scope of the scheme, which involved certain loan proceeds accruing to or paid for the benefit of his co-conspirators.

    b. TT Loan:  Item 2(b) of Exhibit B is not ripe to reduce actual loss since the victims have not yet received it.  For the same reason as stated for item 6 of Exhibit A, item 3 of Exhibit B does not provide a basis for reduction.  Because the amount claimed in item 4 of Exhibit B is an amount covered by insurance (Exs. A016, A019; Dkt. 409 Ex. C ¶ 3(b) n.3), the Court may not reduce restitution by that amount.  See 18 U.S.C. § 3664(f)(1)(B).

---

[4] Item 1 of Exhibit A and item 1 of Exhibit B also fall within the sweep of these claimed deductions.  The Court omits them from discussion here because it already accepted them as proper in point 5 of its Order above.  Point 5 also reflects the Court's acceptance of item 2(a) of Exhibit B in point 5, so the Court will address only the remaining under item 2 of Exhibit B—item 2(b)—here.

7. Restitution shall include "other expenses [that victims] incurred during participation in the [government's] investigation or prosecution of the offense or attendance at [criminal] proceedings related to the offense."  18 U.S.C. § 3663A(b)(4); Lagos v. United States, 138 S. Ct. 1684, 1690 (2018) (interpreting section 3663A(b)(4) to exclude expenses in the course of private investigations, civil litigation, or bankruptcy litigation).  As amounts incurred in assisting with the government's criminal investigation, the TT Portfolio is entitled to $62,980.75 and WFF is entitled to $337,513.75.  (Dkt. 409 Ex. C ¶ 4 & Ex. D ¶ 3).  The P2 Fund has supplemented its sworn submission in connection with the government's sentencing memorandum with an unsworn letter to the Court attesting to $69,348.00 incurred by the P2 Fund in connection with the criminal case.  (Dkt. 409 Ex. B ¶ 6; Dkt. 447).  Because the P2 Fund has not substantiated these expenses, despite an opportunity to do so, they are denied.

8. All other applications regarding restitution are denied.

CONCLUSION

The government shall submit a proposed order of forfeiture and restitution to the Court, consistent with this Opinion and Order no later than 5 p.m. on September 25, 2018.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
September 20, 2018